OPINION
{¶ 1} Appellant, Brandon J. Kaseda, appeals from the trial court's entry of judgment on a jury verdict convicting him of murder, R.C. 2903.02(B), with kidnapping as the underlying felony offense of violence; murder, R.C. 2903.02(B), with felonious assault as the underlying felony offense of violence; kidnapping, R.C. 2905.01(A)(3); and felonious assault, R.C. 2903.11(A)(1). Appellant also appeals from the trial court's judgment entry of sentence. We affirm.
 {¶ 2} In late June 2001, James Beres ("Beres") and Thomas Hogya ("Hogya") approached appellant to purchase $20 of crack cocaine. Appellant gave Beres the drugs; Beres gave appellant a $1 bill and drove off.
 {¶ 3} Shawn Hall ("Hall"), a friend of appellant's, learned of this incident. Rhonda Head-LaForce ("Head") drove Hall to Prospect Street in Painesville, Ohio so that Hall could speak to appellant about the incident. Head and Hall then went to the home of Laveda Lyons ("Lyons") where Head and Hall picked up Isaiah Johnson, III, ("Johnson") and Shawn Fisher ("Fisher"). This group went to the home of Crystal Giddings ("Giddings") because they believed Beres was there.
 {¶ 4} Giddings told Hall that Beres was not there. As Hall and the others returned to Head's van, they saw Hogya. Hall attacked Hogya with a baton-object that he was carrying. Hogya escaped on foot.
 {¶ 5} As the group again prepared to leave they spotted Beres in Gidding's house. Hall knocked on the door and called to Beres. Beres came out of hiding. Hall forced Beres into Head's van and the group drove back to Prospect Street and found appellant. Hall told appellant that he had a present for him and appellant got into the van.
 {¶ 6} While in the van, Hall and appellant argued with Beres about the money Beres owed appellant. Appellant punched Beres in the face several times. This caused Beres to bleed from his nose or from around his eyes. Head drove the van down a dirt road and ordered everyone out of the van.
 {¶ 7} Once outside the van, the group attacked Beres, punching and kicking him. Beres fell to the ground. Appellant, Hall, and the others continued to attack Beres, stomping on his face and chest. The attack lasted two to three minutes. The group piled back into the van and drove off, leaving Beres, bleeding, apparently unconscious, and making a snoring sound, lying in the road.
 {¶ 8} Head then drove to Lyon's house. Fisher left and went to a bar to try to obtain money to repay a debt to Hall. Hall and Head then returned to Head's house. While there, Hall told Ken LaForce, Head's fiancé, that Hall had hit Beres and that Beres was snoring when the group left the scene. LaForce told Hall that the sound he heard was probable Beres choking on his own blood. Hall and Head then left to check on Beres' condition. Hall determined that Beres was dead.
 {¶ 9} Hall and Head then picked up Fisher, Johnson, and appellant. This group went to the apartment of Ali Brown ("Brown"), appellant's girlfriend. Head left Brown's apartment and went home alone. Brown gave appellant a blanket and the group borrowed Brown's car, retrieved Beres' body, and dropped the body in a wooded area of University Circle in Cleveland.
 {¶ 10} On June 29, 2001, an off-duty Cleveland detective discovered Beres' body. An autopsy determined that the cause of death was blunt impact to the chest with multiple rib fractures and soft tissue hemorrhage, atherosclerotic cardiovascular disease, and acute cocaine intoxication. The coroner ruled the death a homicide.
 {¶ 11} Appellant was subsequently indicted on eight counts: (1) aggravated murder in violation of R.C. 2903.01(B) with kidnapping as the underlying offense; (2) aggravated murder in violation of R.C. 2903.01(B) with robbery as the underlying felony offense; (3) murder in violation of R.C. 2903.02(B) with kidnapping as the underlying felony offense of violence; (4) murder in violation of R.C. 2903.02(B), with robbery as the underlying felony offense of violence; (5) murder in violation of R.C. 2903.02(B), with felonious assault as the underlying felony of violence; (6) kidnapping in violation of R.C. 2905.01(A)(3); (7) robbery in violation of R.C. 2911.02(A)(2); and (8) felonious assault in violation of R.C. 2903.11(A)(1). Appellant entered a not guilty plea.
 {¶ 12} Prior to trial, the state moved to dismiss counts 2, 4, and 7. A nolle prosequi was entered on these counts, the remaining counts were renumbered, and the matter proceeded to a jury trial. The jury acquitted appellant of aggravated murder but convicted him of count 2, murder pursuant R.C. 2903.02(B), with kidnapping as the underlying felony offense of violence; count 3, murder pursuant to R.C. 2903.02(B), with felonious assault as the underlying felony offense of violence; count 4, kidnapping, R.C.2905.01(A)(3); and count 5, felonious assault, R.C.2903.11(A)(1).
 {¶ 13} On November 30, 2001, the trial court sentenced appellant to a mandatory prison term of 15 years to life on count 3. Counts 2 and 5 merged into count 3 for purposes of sentencing. The trial court sentenced appellant to nine years on count 4, with this sentence to be served consecutively to the sentence for murder. Thus, appellant received an aggregate sentence of twenty-four years to life.
 {¶ 14} Appellant appeals from the trial court's judgments raising five assignments of error:
 {¶ 15} "[1.] The trial court committed plain error by failing to declare a mistrial and instructing the jury to continue deliberations after the jury returned a written statement to the court indicating that the personal beliefs of one of the members of the jury prohibited that juror from voting according to the law and that the subject juror asked other jurors to instruct him how to vote.
 {¶ 16} "[2.] The appellant received ineffective assistance of counsel in violation of his rights pursuant to theSixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
 {¶ 17} "[3.] The appellant's convictions for kidnapping and murder with kidnapping as an underlying felony of violence are not supported by sufficient evidence.
 {¶ 18} "[4.] The appellant's conviction [sic] are against the manifest weight of the evidence.
 {¶ 19} "[5.] The trial court erred by imposing consecutive sentences upon appellant."
 {¶ 20} Appellant first argues that the trial court erred when it failed to declare a mistrial after the jury sent the following message to the trial judge during deliberations: "A member of the jury's personal belief will not allow him to vote according to the law and this member of the jury would like the other members of the jury to tell him how to vote." The trial judge responded, "You must continue to deliberate until the case is concluded."
 {¶ 21} Appellant argues that the jury's statement demonstrates that one of the jurors had disqualified himself and that the trial court should have declared a mistrial. We disagree.
 {¶ 22} We first note that appellant's counsel did not object to the trial judge's response to the jury's statement, or request a mistrial. Thus, we may review the record only for plain error. Crim.R. 52(B). See, also, State v. Joseph (1995),73 Ohio St.3d 450, 455.
 {¶ 23} In State v. Barnes (2002), 94 Ohio St.3d 21, 27, the Ohio Supreme Court found that the plain error rule places three limitations on our decision to correct plain error: (1) there must be an error, i.e., a deviation from a legal rule; (2) the error must be plain, i.e., the error must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights." The court interpreted this to mean that the error must have affected the outcome of the trial. Even if these three prongs are met, we are not required to correct the error. The Ohio Supreme Court acknowledged the discretionary nature of Crim.R. 52(B) by cautioning courts to notice plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. Id. See, also, Statev. Heller, 10th Dist. No. 01AP-648, 2002-Ohio-879 at ¶ 18.
 {¶ 24} In the instant case, we cannot say that the trial judge's response to the jury's statement constituted plain error. Nor would the trial court necessarily have had to declare a mistrial. Thus, appellant has not demonstrated that, but for the error, the outcome of the trial would have been different.
 {¶ 25} After the jury returned its verdict, defense counsel asked that the jury be polled. Each juror responded that the verdict was his or her own. There is no evidence that the juror referenced in the note disregarded the trial court's instructions or that other members of the jury instructed that juror on how to vote. Thus, there is no evidence that the outcome of the trial would have been different.
 {¶ 26} Appellant's first assignment of error is without merit.
 {¶ 27} In his second assignment of error appellant argues that he was denied effective assistance of counsel because his trial counsel failed to object or move for a mistrial after the jury submitted a statement that one of the jurors was unable to vote according to the law and had asked other jurors to instruct him as to how to vote. We disagree.
 {¶ 28} When we review an ineffective assistance claim, the benchmark is "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v.Washington (1984), 466 U.S. 668, 686. To prevail on a claim of ineffective assistance, appellant must show his counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment." Id. at 687. Appellant must also show prejudice resulting from the deficient performance. Id. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Appellant must show "* * * that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. We presume that counsel's conduct was within the wide range of reasonable professional assistance. Id. See, also, State v.Bradley (1989), 42 Ohio St.3d 136, 143.
 {¶ 29} We need not address the two prongs of appellant's ineffective assistance claim in the order set forth inStrickland.
 {¶ 30} "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."Strickland, supra at 697.
 {¶ 31} As we have discussed, the jury was polled following its verdict and each juror affirmed that the verdict was his or her own. Thus, appellant has not shown that, but for his trial counsel's failure to object or move for a mistrial, the outcome of the trial would have been different. Appellant's second assignment of error is without merit.
 {¶ 32} In his third assignment of error, appellant argues that his murder and kidnapping convictions were not supported by sufficient evidence. Appellant failed to make a Crim.R. 29 motion for acquittal at the close of the state's case-in-chief, or at the close of the defense case-in-chief. Therefore, appellant has waived this assignment of error. See State v. Perry (Aug. 29, 1997), 11th Dist. No. 94-T-5165, 1997 WL 590789, 10.
 {¶ 33} In his fourth assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. We may find that a verdict is against the manifest weight of the evidence even though legally sufficient evidence supports it. State v. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 76. When we consider a manifest weight argument, we review the entire record, weigh the evidence and reasonable inferences, and consider the credibility of witnesses. Id. at ¶ 77. We then determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial. Id. We should only exercise this discretionary power in those exceptional cases where the evidence weighs heavily against conviction. Id. See, also, State v. Thompkins
(1997), 78 Ohio St.3d 380, 387.
 {¶ 34} Appellant was convicted of murder in violation of R.C.2903.02(B). This section provides, "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." The felonies of violence in this case were kidnapping and felonious assault. There was substantial, credible evidence to support the jury's verdict that appellant kidnapped Beres and committed felonious assault against Beres. The state presented evidence that appellant got into the van after being picked up on Prospect Street and that the group, including Beres and appellant, drove around until arriving at the dirt road. Prior to arriving at the dirt road appellant struck Beres several times. Appellant again assaulted Beres after the group exited the van. Thus, the verdict finding appellant guilty of kidnapping was not against the manifest weight of the evidence. See R.C. 2905.01(A)(3). This same evidence supports appellant's conviction for felonious assault. See R.C. 2903.11(A)(1).
 {¶ 35} The state also presented substantial, competent, credible evidence that Beres died as a proximate result of appellant's commission of these offenses. Thus, after a thorough review of the record, we cannot say that the jury's verdict was against the manifest weight of the evidence. Appellant's fourth assignment of error is without merit.
 {¶ 36} In his final assignment of error, appellant contends that the trial court erred by imposing consecutive sentences. This contention is without merit.
 {¶ 37} We review a felony sentence de novo. State v.Bradford (June 2, 2001), 11th Dist. No. 2000-L-103, 2001 WL 589271, 1. We will not disturb a sentence unless we find, by clear and convincing evidence, that the record does not support the sentence or that the sentence is contrary to law. Id. "Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Id.
 {¶ 38} R.C. 2929.14(E)(4) provides:
 {¶ 39} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 40} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 41} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 42} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 43} When imposing consecutive sentences the trial court must also comply with R.C. 2929.19(B)(2). Thus, the trial court must state, on the record at the sentencing hearing, its reasons for imposing consecutive sentences. State v. Comer, 2003-Ohio-4115, at paragraph one of the syllabus.
 {¶ 44} At the sentencing hearing, the trial court stated:
 {¶ 45} "The court finds that you are, Brandon J. Kaseda, a danger to the public and you at the time of the commission of these offenses were advancing the drug culture in a violent and extreme conspiracy and everything about your actions on that night were vile and despicable and everything that our society abhors and wants to do away with."
 {¶ 46} This language satisfies R.C. 2929.14(E)(4)(b). Thus, we conclude that the trial court properly imposed consecutive sentences and appellant's fifth assignment of error is without merit.
 {¶ 47} For the foregoing reasons the judgment of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
Grendell, J., concurs.
WILLIAM M. O'NEILL, J., dissents with dissenting opinion.