OPINION
{¶ 1} Appellant, Scott E. Entze, appeals from the January 23, 2003 judgment entry of the Portage County Court of Common Pleas, in which he was sentenced for burglary.
 {¶ 2} On January 25, 2002, appellant was indicted by the Portage County Grand Jury on one count of burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2), (B), and (C).[1] On February 4, 2002, appellant was arraigned and entered a plea of not guilty. On February 6, 2002, the trial court continued appellant's $20,000 bond.
 {¶ 3} On February 8, 2002, a pretrial hearing was held. The trial court again continued appellant's bond pursuant to its February 11, 2002 judgment entry. Also, on February 11, 2002, appellant filed a waiver of speedy trial.
 {¶ 4} On March 20, 2002, appellant filed a motion to determine competency to stand trial. On April 3, 2002, the trial court ordered appellant to undergo psychological testing. A competency hearing was held on May 20, 2002. On May 22, 2002, the trial court determined that appellant was competent to stand trial.
 {¶ 5} On July 25, 2002, appellee, the state of Ohio, filed a motion in limine to present evidence of similar acts pursuant to Evid.R. 404(B).
 {¶ 6} Appellant filed a motion to suppress identification on October 16, 2002, and a motion to suppress evidence on October 17, 2002. A suppression hearing was held on October 28, 2002. According to its October 29, 2002 judgment entry, the trial court denied appellant's motions.
 {¶ 7} A jury trial commenced on October 29, 2002. In chambers on the morning of trial, the trial court granted appellee's motion in limine to present evidence of similar acts in order to show common scheme, plan, design, and prove identity. The jury returned a verdict of guilty on October 30, 2002. On November 1, 2002, the trial court ordered that this matter be referred to the Portage County Adult Probation for a statutory investigation and report.
 {¶ 8} The facts at trial revealed the following: on December 23, 2001, Jared Dickey ("Dickey"), a Kent State University ("KSU") student, was inside his apartment, located at 14 Tonkin Court, in Kent, Ohio. According to Dickey, he looked out of his second floor bathroom window and saw appellant in the parking lot of an apartment building behind his apartment. Dickey testified that appellant looked around, proceeded up a staircase to the second floor, knocked on a door, looked through and knocked on a window, then lifted the window and entered the apartment. Dickey stated that he called to his roommate, Michael O'Malley ("O'Malley"), who was downstairs, and told him that someone had just jumped through their neighbor's window. O'Malley indicated that he ran upstairs and looked out the window. Both Dickey and O'Malley said that appellant stuck his head out of their neighbor's apartment door, looked around, then closed the door. Dickey called 9-1-1. While on the telephone with the police dispatcher, Dickey observed appellant leave his neighbor's apartment, walk down the stairs, look inside the first floor window, then disappear around the apartment building.
 {¶ 9} Officer Paul Canfield ("Officer Canfield") and Officer Susan Graves ("Officer Graves"), officers with the Kent Police Department ("KPD"), responded to a call at 3:24 p.m. with respect to a burglary in progress at 328 East College Street in Kent. The officers were given a description of the suspect, which included a white male with shoulder length brown hair, wearing glasses and a Spanish style sweater. According to the officers, they could not locate 328 East College Street, so they walked westbound toward 228 East College Street, which was the actual address. Officer Canfield recognized appellant, based on the dispatch description as well as his prior dealings with him, from about forty to fifty yards away walking on the sidewalk in front of 228 East College Street. Officer Canfield stated that he yelled at appellant to stop, but he did not comply. Officer Canfield, who was about twenty feet in front of Officer Graves, testified that he ran over to appellant, informed him of the suspected burglary, and told him that he matched the description. The officers noticed that appellant had a strong odor of alcohol, slurred speech, bloodshot and glassy eyes, and was unsteady on his feet. According to Officer Canfield, appellant declined to answer any questions without the presence of an attorney.
 {¶ 10} Officer Canfield testified that because appellant was wearing a loose fitting sweater which could easily conceal a weapon, he handcuffed appellant for protection so that he could frisk him without the risk of an assault. Officer Canfield and Officer Graves stated that they were concerned for their safety. Officer Canfield told appellant that he was being detained for the investigation of a felony. Officer Canfield noticed two pairs of women's underwear in the large pouch pocket on the front of appellant's sweater but did not take them out at the scene. Appellant was placed under arrest for public intoxication and seated in the police cruiser. The officers brought appellant back to Dickey's and O'Malley's apartment, and Dickey positively identified appellant. Appellant was then taken to the station and charged with burglary.
 {¶ 11} During the course of the investigation, Officer Canfield, Officer Graves, and Officer Robert Treharn ("Officer Treharn"), also an officer with the KPD, received permission from Elizabeth Hegidus ("Hegidus"), a student at KSU and a resident of 228 East College Street, who was in Rocky River, Ohio on Christmas break, to enter her apartment. The officers did not find anything and were unsuccessful in obtaining fingerprints from Hegidus's apartment window because they were smudged.
 {¶ 12} Appellant's vehicle was parked on private property at 238 East College Street. Officer Treharn inventoried and towed appellant's car. The inventory search revealed four pairs of women's underwear.
 {¶ 13} In February 2002, Detective Carl Cassell ("Detective Cassell") and Lieutenant Ray Stein ("Detective Stein") both with the KPD, and Prosecutor Eric Fink ("Prosecutor Fink"), went to speak to appellant's live-in girlfriend, Amanda Bryant ("Bryant"). After being informed by Bryant that there was stolen property in the apartment, Detective Cassell, Detective Stein, and Prosecutor Fink obtained her consent to search. It was listed in the consent to search form that Bryant lived at 257 West Main Street, Suite D, in Ravenna, Ohio. According to Bryant, who testified for the state, she moved from Suite D to Suite E in November 2001. The officers recovered eight hundred and six pieces of women's undergarments from Suite E.
 {¶ 14} Bryant testified that on the day at issue, appellant told her that he went to church in the morning, then to a bar, and later to a girl's house on College Street where he stole panties. Bryant stated that appellant also told her in the past that he would drive around at least once a week in order to determine when women would come out of their residences so that he would know when he could break in and steal their undergarments. Bryant further said that she was present in appellant's vehicle on two previous occasions at college campuses, where appellant watched for women in order to break into their residences and steal their undergarments.
 {¶ 15} William Sackman ("Sackman"), Bryant's and appellant's landlord, testified for appellant that the parties did not have a lease agreement and that to the best of his knowledge, they were in two different units when the arrest and search occurred. Sackman stated that Bryant had keys to both units.
 {¶ 16} Pursuant to the January 23, 2003 judgment entry, the trial court sentenced appellant to a definite term of seven years, with credit for three hundred ninety-five days, and ordered him to pay court costs. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 17} "[1.] The trial court erred to the prejudice of [appellant] when it failed to grant a motion for acquittal made pursuant to Rule 29 of the Ohio Rules of Criminal Procedure.
 {¶ 18} "[2.] The trial court erred to the prejudice of [appellant] when it allowed testimony of other acts with which [appellant] was not charged, thus denying him due process of law.
 {¶ 19} "[3.] [Appellant] was denied his right to due process of law under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution by the prosecutor's improper comments during the course of the trial.
 {¶ 20} "[4.] The jury erred to the prejudice of [appellant] when it convicted him of burglary and the conviction is against the manifest weight of the evidence.
 {¶ 21} "[5.] The trial court erred to the prejudice of [appellant] in overruling his motion to suppress any and all evidence obtained by the [KPD].
 {¶ 22} "[6.] The trial court erred to the prejudice of [appellant] when it ordered him to pay court costs."
 {¶ 23} In his first assignment of error, appellant argues that the trial court erred when it failed to grant a Crim.R. 29 motion for acquittal. Appellant alleges that the evidence is insufficient to sustain his conviction for burglary since reasonable minds could not find beyond a reasonable doubt that the prosecution proved that the residence was burglarized when a person was present or likely to be present.
 {¶ 24} In State v. Barksdale (June 22, 2001), 11th Dist. No. 2000-L-088, 2001 Ohio App. LEXIS 2808, at 3, quoting Statev. Perry (Aug. 29, 1997), 11th Dist. No. 94-T-5165, 1997 Ohio App. LEXIS 3884, at 10, this court stated that: "`[i]n order to preserve the right to appeal the sufficiency of evidence upon which a conviction is based, a defendant must timely file a Crim.R. 29 motion for acquittal with the trial court.' * * * Thus, `if a Crim.R. 29 motion is not made by a defendant, he or she waives any sufficiency of evidence argument on appeal.'Perry at 10. See, also, State v. Roe (1989), 41 Ohio St.3d 18
* * *." (Parallel citation omitted.)
 {¶ 25} In the case at bar, appellant failed to make a Crim.R. 29 motion for acquittal at the close of appellee's case-in-chief, or at the close of the defense's case-inchief. Therefore, pursuant to Perry, supra, appellant has waived this argument. See State v. Kaseda, 11th Dist. No. 2002-L-002, 2004-Ohio-1074, at ¶ 32. Thus, appellant's first assignment of error is without merit.
 {¶ 26} In his second assignment of error, appellant contends that the trial court erred when it allowed testimony of other acts with which he was not charged, thus denying him due process of law. Appellant stresses that the trial court erred by allowing testimony describing actions which were not covered under the indictment and which were highly inflammatory, irrelevant, and prejudicial.
 {¶ 27} Evid.R. 402 provides that "[a]ll relevant evidence is admissible * * *."
 {¶ 28} Evid.R. 403(A) states that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 29} Evid.R. 404 provides in pertinent part:
 {¶ 30} "(A)(1) Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the * * * [exception that] * * * evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible * * *.
 {¶ 31} "* * *
 {¶ 32} "(B) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 33} R.C. 2945.59 deals with proof of a defendant's motive and states that "[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 34} This court stated in State v. O'Neal (Sept. 29, 2000), 11th Dist. No. 99-P-0063, 2000 Ohio App. LEXIS 4557, at 4-5, that "evidence of other acts is admissible as long as `(* * *) it "tends to show" one of the matters enumerated in (R.C. 2945.59) and (* * *) is relevant to (prove the defendant's guilt) of the offense in question.' State v. DeMarco (1987),31 Ohio St.3d 191, 194 * * *." (Parallel citation omitted.)
 {¶ 35} In the case sub judice, the record reflects that appellee filed a motion in limine regarding its intention to present evidence of similar acts pursuant to Evid.R. 404(B). Again, in chambers on the morning of trial, the trial court granted the motion and determined that other acts evidence may be admitted to show common scheme, plan, design, and prove identity. With respect to the witness testimony and admission of two pairs of women's underwear recovered from appellant's person at the KPD, four pairs of women's underwear recovered from appellant's vehicle, and eight hundred and six pairs of women's undergarments recovered from his apartment, the record shows that appellant did not object until the close of appellee's case-in-chief. We must stress that appellant needed to object at the time that the evidence of other acts was presented in order to preserve the issue here. State v. Glaros (1960), 170 Ohio St. 471, paragraph one of the syllabus.
 {¶ 36} It is this court's view that the testimony and admission of the foregoing items are certainly competent and relevant under Evid.R. 402. Based on the facts presented, the evidence admitted did not confuse the issues or mislead the jury pursuant to Evid.R. 403(A). The testimony and evidence admitted were not wholly independent of the crime charged. Rather, the testimony and evidence presented regarding appellant's behavior of "staking out" women in order to break into their homes and steal their undergarments showed his common scheme, plan, design, and identity based on Evid.R. 404(B) and R.C. 2945.59. Also, appellant's argument that appellee should not have been permitted to cross-examine appellant's witness, Beth Penn ("Penn"), regarding his prior criminal record is not well-taken since she put his character for truthfulness at issue. Evid.R. 404(A)(1). Thus, appellant's second assignment of error is without merit.
 {¶ 37} In his third assignment of error, appellant alleges that he was denied his right to due process of law under ArticleI, Section 16 of the Ohio Constitution and theFourteenth Amendment to the United States Constitution due to the prosecutor's improper comments during his closing argument. Appellant stresses that the prosecutor repeatedly referred to his prior bad acts and convictions which suggested to the jury that he should be convicted for the instant offense based on his prior criminal conduct.
 {¶ 38} The Supreme Court in State v. Slagle (1992),65 Ohio St.3d 597, 607, stated: "[w]hen we review a prosecutor's closing argument we ask two questions: `whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.' State v. Smith (1984),14 Ohio St.3d 13, 14 * * *. The closing argument is considered in its entirety to determine whether it was prejudicial. State v. Moritz
(1980), 63 Ohio St.2d 150, 157 * * *." (Parallel citations omitted.)
 {¶ 39} "Counsel is generally given latitude during closing arguments to state what the evidence has shown and what inferences can be made by the jury." State v. Hearns, 11th Dist. No. 2002-P-0050, 2004-Ohio-385, at ¶ 15, citing State v.Davis (1996), 76 Ohio St.3d 107, 117. In determining whether the prosecutor's statements affected a substantial right of the defendant, an appellate court should consider the following factors: "(1) the nature of the remarks; (2) whether an objection was made by defense counsel; (3) whether the court gave any corrective instructions; and (4) the strength of the evidence presented against the defendant." Hearns, supra, at ¶ 15, citing State v. Braxton (1995), 102 Ohio App.3d 28, 41.
 {¶ 40} If a defendant fails to object to the prosecutor's remarks made during closing arguments, a plain error analysis under Crim.R. 52(B) is required. State v. Malcolm (Mar. 25, 1994), 11th Dist. No. 93-L-047, 1994 Ohio App. LEXIS 1369, at 12. "Plain error does not exist unless, but for the error, the outcome at trial would have been different." State v. Jenks
(1991), 61 Ohio St.3d 259, 282, citing State v. Moreland
(1990), 50 Ohio St.3d 58, 62.
 {¶ 41} In the instant matter, the record reflects that appellant's counsel did not object to the remarks made by the prosecutor in his closing argument. Here, appellant challenges two statements. First, in his closing argument, the prosecutor stated:
 {¶ 42} "You've got Amanda Bryant who testified that [appellant] called the day he was incarcerated * * * and admitted to her the whole story.
 {¶ 43} "You've got her testimony telling you about [appellant's] plan, his method of operation, the fact that identity is at issue here. All those things come in in terms of showing that it was him.
 {¶ 44} "That this isn't the only time [appellant's] done this. This is what he does all the time. He has some kind of fetish with women's underwear that he has to break into house after house to get them."
 {¶ 45} The foregoing statement made by the prosecutor was proper since he commented on the evidence in the record from Bryant's testimony during his closing argument. Again, Bryant testified that on the day at issue, appellant indicated that he went to a girl's house on College Street were he stole panties. Bryant stated that appellant also told her in the past that he would drive around at least once a week in order to determine when women would come out of their residences so that he could break in and steal their undergarments. Bryant further said that she was present in appellant's vehicle on two previous occasions where he watched for women so that he could break into their homes and steal their undergarments.
 {¶ 46} Second, on rebuttal, the prosecutor stated:
 {¶ 47} "* * * [T]he evidence in this case is overwhelming that [appellant] * * * is guilty.
 {¶ 48} "Not only does he have the two priors, the three priors actually, but there [are] eyewitnesses that put him going into the apartment, there [are] eyewitnesses getting him coming out of the apartment, and his girlfriend [Bryant], who testified. Everything that [Bryant] said is consistent with what he did in this case."
 {¶ 49} This second statement was also proper, since the prosecutor presented reputation evidence at trial regarding appellant's prior criminal history on the cross-examination of appellant's witness, Penn. Penn put appellant's character trait of truthfulness at issue when she testified on direct examination that she knew appellant well and did not believe that he could do the things that he was charged with. Again, pursuant to Evid.R. 404(A)(1), appellee was permitted to cross-examine Penn regarding appellant's prior convictions. Thus, the prosecutor did not commit plain error. Therefore, appellant's third assignment of error is without merit.
 {¶ 50} In his fourth assignment of error, appellant contends that the jury erred to his prejudice when it convicted him of burglary as the verdict was against the manifest weight of the evidence. Appellant stresses that a conviction is against the manifest weight of the evidence where appellee fails to prove beyond a reasonable doubt that there was a person present or likely to be present in the occupied structure at the time of the alleged incident.
 {¶ 51} In the case at bar, although appellant alleges a manifest weight argument, it appears that he is challenging the sufficiency of the evidence. In any event, appellant's argument fails under either analysis. Under the first assignment of error, we determined that appellant waived any sufficiency argument because he failed to submit a Crim.R. 29 motion. Nevertheless, we will address appellant's manifest weight argument.
 {¶ 52} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 14-15:
 {¶ 53} "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 54} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 55} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 56} R.C. 2911.12(A)(2) governs the crime of burglary and states that "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]"
 {¶ 57} Here, appellant relies on Hegidus's testimony that she was in Rocky River on Christmas break and not in her apartment in Kent when appellant entered on the day at issue. In addition, appellant focuses on Officer Canfield's testimony that appellant was the only person on the street shortly after the burglary as well as Officer Graves's testimony that there were few students in the area since it was two days before Christmas.
 {¶ 58} We must stress that although students who live in a college town are normally at home with their families two days before Christmas, it is not unusual or unlikely to ever find students still on campus. Four KSU students testified at trial that they were present in their campus residences on the day of the incident. Again, Dickey and O'Malley were both inside their apartment and actually witnessed appellant enter Hegidus's apartment. Also, Jane Heltzel and Matthew Busser ("Busser") both testified that they were in their East College Avenue apartments on December 23, 2001. In fact, Busser's apartment is located in the same building as Hegidus's.
 {¶ 59} Even assuming arguendo that a student left his or her campus residence and went out of town for Christmas break, it is not unreasonable or unlikely that he or she may come back to his or her residence early for any number of reasons, including an emergency. See, e.g., State v. Graves (May 1, 2001), 7th Dist. No. 99-CA-113, 2001 Ohio App. LEXIS 2115, at 7. We must note that being absent from one's home alone does not change its residential character for these purposes. Pursuant to Schlee
and Thompkins, supra, the jury did not clearly lose its way in convicting appellant of burglary. Thus, appellant's fourth assignment of error is without merit.
 {¶ 60} In his fifth assignment of error, appellant contends that the trial court erred in overruling his motion to suppress any and all evidence obtained by the KPD.
 {¶ 61} Appellant's first issue alleges that the search and seizure violated his constitutional rights and any evidence obtained as a result of the search is inadmissible where the police had no probable cause or specific and articulable facts upon which to base the investigative stop as well as the seizure of his vehicle.
 {¶ 62} In State v. Foster, 11th Dist. No. 2003-L-039, 2004-Ohio-1438, at ¶ 6, this court stated that: "[a]n appellate court's standard of review with respect to a motion to suppress is de novo. State v. Curry (1994), 95 Ohio App.3d 93, 96 * * *. A reviewing court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592
* * *." (Parallel citations omitted.)
 {¶ 63} In order to determine whether an investigative stop was constitutional, we must ascertain whether the officer had reasonable suspicion, based on articulable facts, that criminal behavior has occurred or is about to occur. Terry v. Ohio
(1968), 392 U.S. 1, 30. The propriety of an investigative stop must be viewed in light of the totality of the circumstances, as viewed through the eyes of a reasonable and prudent police officer. State v. Andrews (1991), 57 Ohio St.3d 86, 87-88. A police officer is justified in conducting a limited search for weapons, if the officer has made a valid investigative detention of a suspect and has a reasonable belief that the suspect is armed and presently dangerous to the officer or to others.Terry, supra, at 24.
 {¶ 64} The Supreme Court of Ohio stated that: "`* * * where an officer making an investigative stop relies solely upon adispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.' (Emphasis sic.)" See Willoughbyv. Liberatore, 11th Dist. No. 2001-L-171, 2002-Ohio-3847, at ¶ 8, quoting Maumee v. Weisner (1999), 87 Ohio St.3d 295, 298. Three classes of informants which are generally recognized include the anonymous informant, the known informant, and the identified citizen informant. Liberatore at ¶ 9, citingWeisner at 300. A tip provided by an identified citizen informant may be viewed as being highly reliable. Liberatore at ¶ 9. "An informant who personally observes an occurrence has greater reliability than an informant who relies on a secondhand description." Id. at ¶ 10, citing Weisner at 300.
 {¶ 65} With respect to the impoundment of vehicles, the court in State v. Taylor (1996), 114 Ohio App.3d 416, 422, stated that: "[a] car may be impounded if it is evidence in a criminal case, used to commit a crime, obtained with funds derived from criminal activities, or unlawfully parked or obstructing traffic; or if the occupant of the vehicle is arrested; or when impoundment is otherwise authorized by statute or municipal ordinance." A routine inventory search of a lawfully impounded automobile is not unreasonable under the Fourth Amendment when conducted in good faith and in accordance with standard police practice. State v. Hathman (1992), 65 Ohio St.3d 403, 407, citing South Dakota v. Opperman (1976), 428 U.S. 364.
 {¶ 66} In the instant case, the burglary was observed first-hand by two witnesses, Dickey and O'Malley. Dickey, an identified citizen informant, called 9-1-1 and provided his name, telephone number, and address, and remained on the phone with the dispatchers until appellant was apprehended. In this sense, Officer Canfield, who was provided with a description of appellant and dispatched to the scene, responded to a highly reliable tip pursuant to Liberatore and Weisner, supra. As such, the dispatch was the only reason for the Terry stop of appellant. Thus, appellee properly demonstrated that the facts precipitating the dispatch justified Officer Canfield's stop of appellant.
 {¶ 67} According to Officer Canfield's testimony at both the suppression hearing and at the trial, he stated that he recognized appellant based on the dispatch description as well as his prior dealings with him. Again, Officer Canfield testified that although he yelled at appellant to stop, he did not comply. After informing appellant of the suspected burglary, both Officer Canfield and Officer Graves noticed that appellant had a strong odor of alcohol, slurred speech, bloodshot and glassy eyes, and was unsteady on his feet. Appellant declined to answer any questions without the presence of an attorney. Officer Canfield stated that because appellant was wearing a loose fitting sweater which could easily conceal a weapon, he handcuffed appellant for protection so that he could frisk him without the risk of an assault. Both Officer Canfield and Officer Graves said that they were concerned for their safety. Officer Canfield told appellant that he was being detained for the investigation of a felony. Although Officer Canfield noticed two pairs of women's underwear in the large pouch pocket on the front of appellant's sweater, he did not take them out at the scene. Appellant was placed under arrest for public intoxication, and later positively identified by Dickey as being involved in the burglary. Therefore, based on the totality of the circumstances, Officer Canfield was justified in conducting a pat-down search of appellant in handcuffs.
 {¶ 68} Furthermore, the search of appellant's vehicle was not investigative in nature. Although Officer Canfield testified at the suppression hearing that appellant's automobile was subject to forfeiture since it was used in the commission of a felony, this was not the reason for the inventory search. Rather, appellant's car was parked on private property without permission of the property owner. Thus, pursuant to Taylor, supra, appellant's vehicle was lawfully impounded. As such, based onHathman and Opperman, supra, the routine inventory search by Officer Treharn was not unreasonable since it was conducted in good faith and in accordance with standard police practice. Therefore, appellant's first issue is not well-taken.
 {¶ 69} In his second issue, appellant contends that Bryant could not give consent to the KPD to search appellant's apartment in Ravenna, which is outside their jurisdiction, when they failed to verify whether she had the ability to consent to the search.
 {¶ 70} This court stated in State v. Webb (June 8, 2001), 11th Dist. No. 2000-G-2304, 2001 Ohio App. LEXIS 2570, at 4-5 that:
 {¶ 71} "* * * warrantless searches and seizures inside an individual's home presumptively violate the Fourth Amendment, subject to a few well-established exceptions. State v. Sneed
(1992), 63 Ohio St.3d 3, 6-7 * * *.
 {¶ 72} "One such recognized exception involves situations where voluntary consent has been obtained from a third party who possesses common authority over the premises. State v. Miller
(1997), 117 Ohio App.3d 750, 759 * * *." (Parallel citations omitted.)
 {¶ 73} In the case at bar, based on the evidence presented, the KPD went to the apartment in Ravenna in February 2002, while appellant was incarcerated, to merely speak with Bryant. Bryant voluntarily told Detective Cassell, Detective Stein, and Prosecutor Fink that there were a lot of stolen items in the apartment. At that time, Bryant signed a voluntary consent to search form. Thus, pursuant to the foregoing and since Bryant is not raising any jurisdictional issues, we believe that the KPD did not act improperly.
 {¶ 74} Although it was listed in the February 2002 consent to search form that Bryant lived in Suite D, she testified at trial that she moved from Suite D to Suite E in November 2001. As such, despite the clerical error, the evidence shows that Suite E was Bryant's apartment. According to Sackman, Bryant's and appellant's landlord, the couple did not have a lease agreement. Sackman further testified that he believed that Bryant and appellant were in separate units when the arrest and search occurred. However, Sackman did state that Bryant had keys to both units. Thus, pursuant to Miller, supra, Bryant's voluntary consent to enter, search, and remove the items was a proper consent from a third party who possessed common authority over the premises. Therefore, appellant's second issue is not well-taken. Appellant's fifth assignment of error is without merit.
 {¶ 75} In his sixth assignment of error, appellant argues that the trial court erred when it ordered him to pay court costs. Appellant stresses that the trial court cannot order him, an indigent, to pay court costs when he has no visible means of support, has been appointed counsel to represent him during every step in the process, and fails to make a finding that he is able to pay the costs.
 {¶ 76} Pursuant to the trial court's initial judgment entry, appellant was ordered to pay court costs. Appellant later filed a motion to vacate court costs. A hearing on appellant's motion was held, and the trial court granted appellant's motion to vacate court costs. Therefore, appellant's sixth assignment of error is moot.
 {¶ 77} For the foregoing reasons, appellant's first through fifth assignments of error are not well-taken, and appellant's sixth assignment of error is moot. The judgment of the Portage County Court of Common Pleas is affirmed.
Grendell, J., Rice, J., concur.
[1] On December 26, 2001, appellant was found to be an indigent and was appointed counsel. On December 28, 2001, appellant filed a waiver of his right to a preliminary hearing pursuant to Crim.R. 5 and agreed that the matter be bound over to the grand jury.