OPINION
{¶ 1} Appellant, Gregory Y. Poling, appeals from judgment entries of the Portage County Court of Common Pleas, finding him guilty of multiple counts of rape, sexual battery, unlawful sexual conduct with a minor, and gross sexual imposition, and sentencing him to an aggregate prison term of 35 years. For the reasons that follow, we reverse the judgment of the trial court and remand the matter for a new trial.
 {¶ 2} By way of background, appellant is the biological father of the alleged victim. Her date of birth is April 23, 1989. The incidents which resulted in appellant's conviction occurred from the winter of 2001 until the fall of 2003. Thus, the alleged victim was eleven to fourteen years old when the incidents allegedly occurred. During this time, appellant, his wife, Denise Poling ("Denise") — the victim's biological mother — the victim, and her older brother resided in Portage County, Ohio.
 {¶ 3} On January 30, 2004, appellant was indicted on the following counts: (1) three counts of rape, in violation of R.C.2907.02(A)(1), each a first degree felony; (2) three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4) and (B), each a third degree felony; (4) nine counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A) and (B)(3), each a third degree felony; and (5) twelve counts of sexual battery, in violation of R.C. 2907.03(A)(5), each a third degree felony.
 {¶ 4} At his arraignment, appellant pleaded not guilty to the aforementioned charges. Shortly thereafter, the court granted the state's motion to dismiss one count of sexual battery and one count of unlawful sexual conduct with a minor.
 {¶ 5} This matter ultimately proceeded to a jury trial. Testimony at trial revealed that on September 29, 2003, the Portage County Sheriff's Department received a phone complaint from appellant regarding an unruly child at his residence. Appellant informed a deputy responding to the complaint that the unruly child was his daughter, the alleged victim.
 {¶ 6} The deputy and the alleged victim discussed the situation in his police car. At this time, the alleged victim told the deputy that appellant had engaged in multiple instances of sexual conduct and sexual contact with her. The deputy then contacted Portage County Job and Family Services ("PCJFS"). After speaking with appellant, Denise, and the alleged victim, PCJFS assumed temporary custody of the alleged victim.
 {¶ 7} During trial, the alleged victim provided testimony regarding ten separate incidents of appellant engaging in sexual conduct and sexual contact with her. She testified that the first incident occurred when she was eleven years old in the winter of 2001. She stated that the final incident occurred when she was more than thirteen years old in the fall of 2003. The victim disclosed rather sketchy details involving certain incidents, and could not recall virtually any of the details of others. Generally, she provided a loose time frame for each incident, the place where it transpired, the manner of the occurrence, and appellant's conduct during the incident. The only evidence regarding any of these incidents was the testimony of the alleged victim, and that of a girlfriend and that friend's mother, to whom the alleged victim spoke at Christmas 2002. No physical evidence of abuse was introduced. Indeed, the testimony of a state witness revealed that the girl's hymen was intact.
 {¶ 8} Following the close of the state's case, appellant moved for an acquittal pursuant to Crim.R. 29(A). The courted granted an acquittal as to one count of unlawful sexual conduct with a minor, one count of gross sexual imposition, and one count of sexual battery. The remaining twenty-two counts were determined by the jury.[1] After deliberations, the jury returned verdicts of guilty on the remaining twenty-two counts. The court issued a judgment entry convicting appellant of these charges.
 {¶ 9} Following appellant's conviction, the trial court held a sentencing hearing and issued a judgment entry of sentence. The court sentenced appellant as follows: three seven-year terms of imprisonment on three counts of rape, with the terms to run consecutively; two four-year terms of imprisonment on two counts of gross sexual imposition, with these terms running concurrently to the rape terms; and seven two-year terms of imprisonment on seven counts of sexual battery, with these terms to run consecutively to each other and the rape terms.[2]
Appellant's sentence resulted in an aggregate prison term of 35 years.
 {¶ 10} From these judgments, appellant filed a timely notice of appeal and now sets forth the following five assignments of error for our consideration:
 {¶ 11} "[1.] The prosecution in this matter engaged in a pervasive pattern of misconduct throughout the proceedings which combined to deprive the appellant of his right to a fair trial.
 {¶ 12} "[2.] The trial court erred to the prejudice of the appellant in failing to grant the appellant's motion for a mistrial.
 {¶ 13} "[3.] The trial court erred in failing to grant the appellant's motion for judgment of acquittal on all charges, as the evidence presented was not legally sufficient to support a conviction.
 {¶ 14} "[4.] The appellant's convictions are against the manifest weight of the evidence.
 {¶ 15} "[5.] The trial court erred in imposing a thirty-five year prison sentence upon the appellant."
 {¶ 16} Under his first assignment of error, appellant argues that he was denied a fair trial due to prosecutorial misconduct. Appellant maintains that various instances of misconduct occurred during the prosecutor's opening and closing statements. He also contends that the prosecutor's multiple leading questions were misconduct.
 {¶ 17} To make a finding of prosecutorial misconduct, a reviewing court must determine whether the challenged statements were improper, and if so, whether the remarks affected the defendant's substantial rights. State v. Smith,87 Ohio St.3d 424, 442, 2000-Ohio-450. A conviction will not be reversed because of prosecutorial misconduct unless it so taints the proceedings that a defendant is deprived of a fair trial. Id. We hold that in this case, appellant was deprived of a fair trial.
 {¶ 18} First, appellant argues that, during the state's opening statement, the prosecutor made reference to evidence of other bad acts beyond those appellant had been charged with, in contradiction to Evid.R. 404(B). Appellant had requested, and the trial court granted, a motion in limine regarding other acts prior to opening statements. Appellant directs our attention to the following remark made by the prosecutor during opening statement:
 {¶ 19} "* * * And those charges, some of them are based upon how old [the alleged victim] was at the time she can remember this incident occurred and there is a difference between 12 and under age 13 and above and for purposes of this trial the charges that were charged in this case that [the alleged victim] was best able to remember details about were — * * *."
 {¶ 20} Appellant's counsel objected to this statement, arguing that the phrase "was best able to remember details about" suggested evidence of other bad acts. The trial court warned the prosecution and overruled the objection. Immediately thereafter, despite the court's admonishment, the prosecutor told the jury:
 {¶ 21} "Specifically, when you get your instructions in this case [the victim's] going to testify to you and I'm going to ask her about 11 specific instances beginning at a time period shecan best remember[.]" (Emphasis added.)
 {¶ 22} Evid.R. 404(B) is to be strictly construed against the state. State v. DeMarco (1987), 31 Ohio St.3d 191, 194. Herein, appellant's counsel objected to the clear implication of "other acts" evidence made by the prosecutor, thus preserving the issue for appeal. State v. Davis (1991), 62 Ohio St.3d 326, 337. Then, the trial court having overruled the objection — while nevertheless warning the prosecutor — a similar reference was immediately made. Ultimately no evidence of other bad acts was introduced at trial, so this portion of appellant's first assignment of error is not well-taken. And yet, the incident foreshadows the problem posed by this trial, i.e., the relentless "piling on" of questionable trial tactics by the prosecution.
 {¶ 23} Next, appellant argues that the prosecutor's persistent use of leading questions resulted in prosecutorial misconduct. This portion of appellant's first assignment of error has merit.
 {¶ 24} Evid.R. 611(C) provides that leading questions cannot be used on direct examination of a witness "except as may be necessary to develop his testimony." The exception of Evid.R. 611(C) "is quite broad and places the limits upon the use of leading questions on direct examination within the sound discretion of the trial court." State v. Lewis (1982),4 Ohio App.3d 275, 278.
 {¶ 25} With respect to the direct examination of minor sex abuse victims, it is well-established that "[a] prosecutor may ask leading questions of a minor victim to establish the manner in which he or she has been specifically abused * * * and to pinpoint specific details and times." State v. Rodrigues (Mar. 26, 1996), 10th Dist. No. 95APA06-683, at 13, citing State v.Madden (1984), 15 Ohio App.3d 130, 133.
 {¶ 26} Nevertheless, there is some limit upon the use of leading questions in these situations. Thus, abuse of discretion was not found when the trial court allowed "limited" use of leading questions with a twelve-year old, particularly since these "were generally followed with other questions which required the girl to provide additional information." State v.DeBlasis, 8th Dist. No. 81126, 2004-Ohio-2843, at ¶ 45. InMadden, the minor victims were an eight-year old girl and an eleven-year old, mentally-challenged boy. Id. at 130-135. In finding no reversible error in the use of leading questions, the Twelfth District relied on the decision of the Ohio Supreme Court in State v. Holt (1969), 17 Ohio St.2d 81, 83, wherein the use of leading questions with a seven-year old rape victim was approved.
 {¶ 27} In the case sub judice, we have reviewed the testimony elicited by the state from its witnesses, line by line. The state called eleven witnesses. Leading questions, often supplying testimony, were asked of eight witnesses. These questions, with their answers, often formed a substantial part of the witness' performance. The prosecution would persist in leading, following objections (often sustained) by the trial court. The prosecution did this with mature, experienced witnesses, such as Detective Hillegas of the Portage County Sheriff's Department. It did this in questioning its own investigator, Ron Craig. It did this with Denise, the victim's mother, providing her with an answer following a sustained objection.
 {¶ 28} In this case, the direct examination of the alleged victim did not contain a "limited" number of leading questions, buttressed by information elicited in the normal manner.DeBlasis, supra, ¶ 45. Rather, it was examination by leading, and providing the witness with the answers sought.
 {¶ 29} Defense counsel did not object to the balance of the improper questions posed by the prosecution. Generally, this results in waiver of the claimed error on appeal, absent plain error. Cf. State v. Lott (1990), 51 Ohio St.3d 160, 167. Plain error exists when it is clear that a defendant would not have been convicted absent the offending conduct. State v. Jenks
(1991), 61 Ohio St.3d 259, 282. Plain error is a doctrine to be applied with forbearance. But in this case, it exists. The prosecution relied so heavily on leading its witnesses, and supplying them with answers, that we cannot see how appellant's conviction could otherwise have been obtained.
 {¶ 30} The prosecution cannot employ trial tactics requiring defense counsel to become a "jack-in-the-box," popping up every third minute to object, in order to create a record on appeal, when the purpose of our criminal justice system is, principally, to provide a fair trial in the first instance. It is notable, in similar vein, that when appellant's counsel moved for a mistrial, at sidebar, on the basis of the prosecution's leading its witnesses, the trial court felt compelled to note in front of the jury, that it had sustained appellant's objections to leading questions, and the prosecutor stated that he could vouchsafe for that. This incident is tending toward the conduct so thoroughly disapproved by the Supreme Court in State v. Keenan (1993),66 Ohio St.3d 402, 4064-07.
 {¶ 31} The cumulative effect doctrine is also applicable to the prosecution's questioning in this case. "Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed when the cumulative effect of the error deprives a defendant of the constitutional right to a fair trial." DeMarco at paragraph two of the syllabus. Of course, the mere number of errors does not bring the cumulative effect doctrine into play. State v.Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, at ¶ 211. However, in this case, it is not the number of improper questions asked by the prosecution which is at issue; it is the effect of relying on such questions, and the answers thereto, in proving the state's case. Once again, remove these from the record, and it ceases to exist.
 {¶ 32} Appellant also cites to portions of the prosecutor's closing statement as evidence of prosecutorial misconduct. Specifically, appellant argues that the prosecutor engaged in misconduct during the closing statement by expressing his own personal beliefs and by mentioning facts not in evidence.[3]
 {¶ 33} At the outset, we note that appellant failed to object to the prosecutor's closing remarks. When a defendant fails to object to the prosecutor's remarks made during closing arguments, a plain error analysis under Crim.R. 52(B) is required. State v.Entze, 11th Dist. No. 2003-P-0018, 2004-Ohio-5321, at ¶ 40. "Plain error does not exist unless, but for the error, the outcome at trial would have been different." Jenks at 282.
 {¶ 34} "* * * [T]he prosecution is entitled to a certain degree of latitude in summation * * *." State v. Liberatore
(1982), 69 Ohio St.2d 583, 589. A prosecutor may comment upon the evidence in his closing argument and state the appropriate conclusions to be drawn therefrom. State v. Kish, 11th Dist. No. 2001-L-014, 2002-Ohio-7130, at ¶ 52. However, prosecutors "may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." Lott at 166. Comments not derivative of the evidence, but rather reaching a conclusion about the merits of the evidence, are "unconstitutionally poaching on the sacred preserves of the factfinder." State v.Hale, 11th Dist. No. 2003-P-0075, 2004-Ohio-6943, at ¶ 50.
 {¶ 35} Appellant notes the following portion of the prosecution's closing statement: "I argue to you that her [the alleged victim's] testimony is the truth. She could have had opportunities up there to demonize her father. She could have had opportunities up there to create and fabricate and I don't — I don't believe any of this evidence or the testimony of the evidence in this case, Ladies and Gentlemen, has shown you she's done that." The foregoing is on the precipice of plain error. The prosecutor, in effect, told the jury his chief witness was credible and telling the truth — then sought to bolster the assertion with reference to what she did not state.
 {¶ 36} However, what tips the prosecution's closing statement from the precipice of admissibility, into the slough of reversal, is the assertion that the alleged victim testified that the final instance of abuse, on or about September 29, 2003, involved a gift of $60.00 from appellant, for the alleged victim's homecoming dance dress, in return for sex. This is simply not the evidence adduced at trial. Regarding an entirely separate incident, the alleged victim asserted that she was required to have sex in order to visit with friends. "`Where opinions [on guilt] are expressed on facts outside the evidence, or are predicated on inferences based on facts outside the evidence, such opinions have not been countenanced and the judgments in those cases have been reversed upon appeal.'" (Citation omitted.)Lott at 166. Accordingly, appellant's assertion that the closing statement of the prosecution constituted misconduct has merit.
 {¶ 37} Appellant's first assignment of error is well-taken.
 {¶ 38} Appellant's second assignment of error, that the trial court erred in not granting his motion for mistrial, is also well-taken. As was discussed above, the prosecution's misuse of leading questions, effectively supplying answers to its witnesses, denied appellant a fair trial, whether analyzed under prosecutorial misconduct and plain error analysis, or under the cumulative effect doctrine.
 {¶ 39} In view of our disposition of appellant's first two assignments of error, the other three are moot, and we decline to reach them.
 {¶ 40} Appellant's conviction is reversed, and this case remanded for new trial.
O'Neill, J., concurs.
Ford, P.J., dissents with Dissenting Opinion.
[1] Appellant renewed his motion for acquittal as to the remaining twenty-two counts after the close of all evidence.
[2] When sentencing appellant, the court consolidated many of the counts as allied offenses of similar import.
[3] Appellant's argument also states that the prosecutor engaged in similar misconduct during the opening statement. However, appellant fails to direct our attention to a specific example of such misconduct during the opening statement, and our own review of the opening statement fails to reveal any misconduct.