OPINION
{¶ 1} Defendant-appellant William Ahmed appeals his conviction and sentence in the Stark County Court of Common Pleas for one count of Gross Sexual Imposition in violation of R.C. 2907.05 (A)(4), a felony of the third degree. The plaintiff-appellee is the State of Ohio.
 {¶ 2} From around October, 1997 to January, 1998, James Blakeney lived with his aunt and uncle on 15th Street N.E., Canton, Stark County, Ohio. While living there, James indicated he was sexually assaulted by his cousin, the appellant. James was approximately seven years old when the sexual assaults occurred. The allegations did not come to light until approximately seven years later when James disclosed to his step-father that the sexual assaults had occurred and he began counseling.
 {¶ 3} According to James, the appellant showed him pornographic movies while they were in the bedroom of the house. The appellant also kissed James' penis and then made James do the same to him. Finally, it was alleged that the appellant put his penis in or on James' buttocks and that James did the same to the appellant.
 {¶ 4} Once the allegations were made, Holly Steinbach of the Stark County Department of Jobs and Family Services (SCDJFS) was assigned to the case. She in turn contacted Detective James Armstrong of the Canton Police Department regarding the sexual abuse allegations. Ms. Steinbach also sent the appellant a letter asking him to come for a meeting with her at the Canton Police headquarters.
 {¶ 5} The appellant had two interviews with Ms. Steinbach and Detective Armstrong. In the first interview, the appellant was confronted with the accusations made by James Blakeney. He initially denied the allegations, but then made incriminating statements once Detective Armstrong left the room. In the second interview, the appellant declined to make a tape recorded statement and indicated that whatever was in Ms. Steinbech's file was what had happened.
 {¶ 6} In July, 2004, appellant was indicted by the Stark County Grand Jury for three counts of Rape in violation of R.C. 2907.02 (A)(1)(b), felonies of the first degree and one count of Gross Sexual Imposition in violation of R.C. 2907.05 (A)(4), a felony of the third degree.
 {¶ 7} In November, 2004 the case was tried before a jury. At the conclusion of the trial, appellant was found not guilty of the three counts of Rape, but guilty of Gross Sexual Imposition. The trial court subsequently sentenced the appellant to four years incarceration with judicial release after fourteen months. Further, appellant was classified as a sexually oriented offender.
 {¶ 8} Appellant timely appeals and raises the following three assignments of error for our consideration:
 {¶ 9} "I. THE APPELLANT WAS DENIED A FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT.
 {¶ 10} "II. THE TRIAL COURT ERRED IN BASING ITS SENTENCE OF A PRISON TERM FOR A THIRD DEGREE FELONY ON FACTS THAT WERE NOT FOUND BY A JURY OR STIPULATED TO BY THE APPELLANT.
 {¶ 11} "III. THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO A TERM GREATER THAN THE MINIMUM".
 I. {¶ 12} In his First Assignment of Error, appellant maintains that during closing argument the prosecutor committed prosecutorial misconduct by arguing that the State's witnesses had nothing to gain from their testimony. Appellant claims that those comments improperly expressed a personal opinion about the credibility of the witnesses. We disagree.
 {¶ 13} The prosecutor's duty in a criminal trial is two-fold. The prosecutor is to present the case for the State as its advocate and the prosecutor also is responsible to ensure that an accused receives a fair trial. Berger v. U.S. (1935), 295 U.S. 78; State v. Staten (1984),14 Ohio App. 3d 197; ABA Criminal Justice Standards 3-1.1(b).
 {¶ 14} In McMullen v. Maxwell (1965), 3 Ohio St. 2d 160, the Ohio Supreme Court recognized that misconduct of a prosecutor may deprive a defendant of a fair trial and further held in State v. Maurer (1984),15 Ohio St. 3d 239 that misconduct can be made a ground of error if it deprives a defendant of a fair trial.
 {¶ 15} The test for reversal when an accused invokes a claim of prosecutorial misconduct has been stated by the United States Supreme Court and the Ohio Supreme Court.
 {¶ 16} In Chapman v. California (1967), 386 U.S. 18, the United States Supreme Court provided the following test:
 {¶ 17} 1. Was there prosecutorial misconduct?
 {¶ 18} 2. If so, was there a reasonable possibility that the evidence complained of might have contributed to the accused's conviction.
 {¶ 19} The Ohio Supreme Court has adopted a similar test in the capital case of State v. Maurer, supra and also in State v. Smith,
supra, not a capital case:
 {¶ 20} 1. Did the prosecutor's conduct amount to misconduct?
 {¶ 21} 2. If so, could this Court find, beyond a reasonable doubt, that the jury would have found the defendant guilty had there been no misconduct on the part of the prosecution.
 {¶ 22} Appellant did not object to either comment to which he now claims error. Therefore, we must find plain error in order to reverse.
 {¶ 23} Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 24} In U.S. v. Dominguez Benitez (June 14, 2004), 124 S.Ct. 2333,159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U.S. 279, 309-310 (1991) (giving examples).
 {¶ 25} "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakosv. United States, 328 U.S. 750 (1946). To affect "substantial rights," see 28 U.S.C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." Id. at 2339. See, also, State v. Barnes (2002), 94 Ohio St.3d 21,759 N.E.2d 1240.
 {¶ 26} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004), 101 Ohio St.3d 118,120, 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v. Barnes
(2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 27} A prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982), 69 Ohio St.2d 583, 589,433 N.E.2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. State v. Maurer
(1984), 15 Ohio St.3d 239, 269, 473 N.E.2d 768. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136, 141, 1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431.
 {¶ 28} In State v. Draughn (1992), 76 Ohio App.3d 666, 602 N.E.2d 790, this Court stated: "[i]n opening closing argument the prosecutor is limited to comments upon the evidence, and the logical and appropriate conclusions to be drawn therefrom. Thus, he can bolster his own witnesses, and conclude by saying, in effect, `The evidence supports the conclusion that these witnesses are telling the truth.' He cannot say, `I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor. See State v. Smith (1984),14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. In a sense, such argument by the prosecutor injects himself into the trial as a thirteenth juror, and claims to himself the first vote in the jury room. Further, it is inappropriate for the prosecutor to vouch for the integrity of his witnesses. Id.
 {¶ 29} "As to the defense witnesses, including the defendant, the prosecutor may comment upon the testimony, and suggest the conclusions to be drawn therefrom. He can say, `The evidence supports the conclusion that the defendant is lying, is not telling the truth, is scheming, has ulterior motives, including his own hide, for not telling the truth.' SeeState v. Strobel (1988), 51 Ohio App.3d 31, 554 N.E.2d 916. He may not say, `I believe the defendant is lying,' for the same reasons as above.
 {¶ 30} "In his rebuttal argument, the prosecutor may argue that the evidence does not support the conclusion postulated by defense counsel. He may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. He may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight.
 {¶ 31} "Generally the credibility of various witnesses will now have been put in issue by the argument of the defense. Considerable additional latitude is due the prosecutor at this juncture, either on fair play grounds or because the comments are invited by the defense. The prosecutor should be allowed to go as far as defense counsel. Thus, if the defense accuses witnesses of lying, the prosecutor should have the same right.
 {¶ 32} "However, the prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case. Thus, he cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case. UnitedStates v. Solivan (C.A.6, 1991), 937 F.2d 1146". Id. at 670-71,602 N.E.2d at 793.
 {¶ 33} The first remark that appellant complains of in this Assignment of Error is ". . . James doesn't have any reason to make this up now. I mean, it's been seven years. He doesn't get anything from this". (3 T. at 21). The second objectionable comment is ". . . [t]hese people they don't have a reason to make this up. They don't get paid by the confession, you know. This isn't a traffic ticket. So they have nothing to gain from this; they don't have any bias . . ." (Id. at 22-23).
 {¶ 34} In the instant case, the prosecutor did not improperly bolster the credibility of her witnesses. The prosecutor did not state that she personally believed the testimony of the witnesses; she merely commented that the witnesses did not have a motive to lie. As appellant raised issues concerning the credibility of the witnesses during trial, these statements in closing argument did not constitute misconduct. We would note that appellant's trial counsel stated during his closing argument that the complaining witness' credibility was at issue. (3T. at 32). Defense counsel asked "Is he truthful?" (Id.). He further stated "James is not truthful, he cannot be trusted, he exaggerates, he will lie for attention; he will continue to lie and allow a lie to snowball until it's out of control". (Id. at 42-43). Further we have found similar remarks not to constitute prosecutorial misconduct. See, State v. Draughn,
supra; State v. Bast (Sept. 20, 1999), 5th Dist. No. 1998CA00071; Statev. Johnson (Nov. 5, 1999), 5th Dist. No. 99C-A-26.
 {¶ 35} Appellant's First Assignment of Error is overruled.
 II. {¶ 36} In his Second Assignment of Error, appellant argues that a trial court cannot sentence an individual to a prison term for a third degree felony because the facts necessary to support imposition of a prison term must be presented to the jury. We disagree.
 {¶ 37} Appellant argues that his sentence is contrary to the dictates of two recent decisions from the United States Supreme Court, to wit:Apprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348 and Blakelyv. Washington (June 24, 2004), 124 S.Ct. 2531, 159 L.Ed.2d 403; 72 U.S.L.W. 4546.
 {¶ 38} This court has previously held a jury is not required to find the factors set forth in R.C. 2929.13(B)(2) or R.C. 2929.14(B) before a judge may impose a prison sentence for the conviction of a third, fourth or fifth degree felony. State v. Iddings (Nov. 8, 2004), Delaware App. No. 2004-CAA-06043, State v. Hughett (Nov. 18, 2004), Delaware App. No. 2004-CAA-06051, 2004-Ohio-6207; State v. O'Conner (Dec. 3, 2004), Delaware App. No. 2004-CAA-028, 2004-Ohio-6752.
 {¶ 39} Accordingly, appellant's Second Assignment of Error is overruled.
 III. {¶ 40} In his Third Assignment of Error, appellant maintains that the trial court erred in sentencing appellant to a term of imprisonment greater than the minimum sentence. We agree.
 {¶ 41} A violation of R.C. 2907.05(A) (4) (gross sexual imposition on a victim less than thirteen years of age) is a felony of the third degree. R.C. 2907.05(B). Pursuant to R.C. 2929.14(A) (3), a felony of the third degree warrants a definite prison term of one, two, three, four, or five years. The four-year term imposed by the trial court clearly fell within this range. However, R.C. 2929.14(B) mandates that when imposing a prison sentence upon an offender for a felony when the offender has not previously served a prison term, a court must impose the shortest prison term authorized for the offense unless the court finds on the record that the shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender.
 {¶ 42} R.C. 2929.14(B) does not require the trial court to give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence. State v. Carter, Coshocton App. No. 04CA8, 2004-Ohio-6365, ¶ 22, citing State v. Edmonson, 86 Ohio St.3d 324, syllabus, 1999-Ohio-110. The Court in Edmonson specified, however, that the record of the sentencing hearing must show that the trial court found either or both of the two statutorily-sanctioned reasons for exceeding the minimum term warranted the longer sentence. Id. at 326; See, also,State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph two of the syllabus.
 {¶ 43} At page thirteen of its brief the State concedes that trial court did not make the required findings in the case at bar.
 {¶ 44} Accordingly, appellant's Third Assignment of Error is sustained.
 {¶ 45} The judgment of the Court of Common Pleas is affirmed in part and reversed in part. The case is remanded to the trial court for re-sentencing appellant in accordance with the decision and State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.
Gwin, P.J., and Farmer, J., concur Hoffman, J., concurs in part; dissents in part