OPINION
{¶ 1} Defendant-appellant Steven Ford appeals from his conviction and sentence for Rape. He contends that the trial court erred by failing to admit evidence that the victim had made prior false allegations against another individual and that the victim had recanted prior allegations made against him. Ford further contends that he was denied a fair trial due to prosecutorial misconduct. Finally, Ford claims that the trial court erred by denying his motion for a mistrial.
 {¶ 2} We conclude that the trial court did not correctly apply the applicable statutory and case law when it determined that evidence of prior false allegations and a prior recantation were not admissible. We further conclude that the record supports Ford's claim of prosecutorial misconduct. Finally, we conclude that the trial court did not err with regard to Ford's motion for a mistrial.
 {¶ 3} Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 4} In July of 2004, Ford was indicted on two counts of Rape and five counts of Gross Sexual Imposition (GSI). All of the counts involved Ford's step-daughter, who was under the age of thirteen at the time of the offenses. Just prior to trial, in June 2005, the State dismissed the charges of GSI. The parties proceeded to trial on the remaining counts of Rape.
 {¶ 5} Of relevance to this appeal, Ford claimed that the victim had previously made accusations against him that she subsequently recanted. He also claimed that she had made false accusations against another individual. Ford argued that he should be permitted to cross-examine the victim with regard to these issues.
 {¶ 6} The trial court conducted an in camera hearing on this issue. During the hearing, the victim stated that "a long time ago," she informed her mother that Ford had touched her in her "private place." She also admitted that she later recanted those accusations, and instead told her mother that the actions of which she accused Ford had been committed by her step-brother. The victim testified that the statements against her step-brother were false, and insisted that it was Ford who had actually committed the prior offense. According to the victim, she recanted and made the false allegation because of threats made to her by Ford.
 {¶ 7} Following the hearing, the trial court found that the victim's prior recanted allegations against Ford involved sexual activity. Thus, the trial court concluded that the provisions of the rape shield statute prohibited Ford from cross-examining the victim, or submitting evidence, regarding the fact that the victim had recanted her statement to her mother. The trial court further found the false accusations against the step-brother to be "so closely related" to the allegations against Ford as to render this evidence inadmissible pursuant to the rape shield law. The trial court's decision was based upon its interpretation of State v. Boggs (1992), 63 Ohio St. 3d 418, and State v.Villa, Montgomery App. No. 18868, 2002-Ohio-2939.
 {¶ 8} Following trial, the jury convicted Ford as charged. He now appeals.
 II {¶ 9} Ford's First Assignment of Error is as follows:
 {¶ 10} "MR. FORD WAS DENIED THE RIGHT TO CONFRONT AND CROSSE-XAMINE WITNESSES, A FAIR TRIAL, AND DUE PROCESS OF LAW, IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, §§ 10 AND 16 OF THE OHIO CONSTITUTION, WHEN THE COURT IMPROPERLY LIMITED CROSS-EXAMINATION TO PRECLUDE EVIDENCE OF FALSE ACCUSATIONS BY THE ALLEGED VICTIM."
 {¶ 11} Ford's argues that the trial court misconstrued R.C.2907.02(D), and thus failed to admit probative evidence regarding prior false accusations and recantations made by the victim.
 {¶ 12} R.C. 2907.02(D), commonly referred to as the "rape shield" law, provides in pertinent part as follows:
 {¶ 13} "Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
 {¶ 14} The trial court, in this case, incorrectly construed both Boggs, supra, and Villa, supra, as requiring, pursuant to the rape shield law, exclusion of evidence of prior recanted allegations when there is evidence that the allegations involved actual sexual activity.
 {¶ 15} In Boggs, supra, the Ohio Supreme Court addressed the issue of "whether the rape shield provisions of R.C.2907.02(D) prohibit a defendant from cross-examining an alleged rape victim about prior false rape allegations she is alleged to have made." Id. at 420. In that case, the defendant alleged that the victim had falsely accused another individual, not the defendant, of raping her. Id. at 419.
 {¶ 16} In analyzing the matter, the court issued the following holding:
 {¶ 17} "Evid.R. 608(B) allows, in the trial court's discretion, cross-examination on specific instances of conduct `if clearly probative of truthfulness or untruthfulness.' In certain instances it is within the discretion of the trial court to permit cross-examination of a rape victim as to prior false accusations of rape.
 {¶ 18} "Where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an in camera hearing to ascertain whether sexual activity was involved and, as a result, cross-examination on the accusation would be prohibited by R.C.2907.02(D), or whether the accusation was totally unfounded and therefore could be inquired into pursuant to Evid.R. 608(B)." Id. at paragraphs one and two of the syllabus.
 {¶ 19} Subsequently, this court decided Villa, which involved a defendant convicted of Rape. In Villa, as here, the victim was alleged to have made prior false allegations against the defendant. Id. The trial court, upon motion, held an in camera hearing pursuant to the holding in Boggs. Id. Following the hearing, the trial court determined that the prior allegation made by the victim had involved sexual activity, and that the evidence was thus barred by the provisions of R.C. 2907.02(D). Id.
 {¶ 20} On appeal, Villa argued that the trial court erred because it failed to permit him to cross-examine the victim prior to holding the in camera hearing. Id. He also argued that the trial court did not "explore the prior incident sufficiently to determine whether it was false."
 {¶ 21} We disagreed, and noted that Boggs "does not mandate that the defendant be given an opportunity to ask the victim if she had made any prior false allegations[, but merely stated] that, if the defendant asks and the victim answers in the affirmative, the trial court must conduct an in camera hearing." Id. We further noted that there was nothing in the record to suggest that the trial court did not conduct a proper hearing. Id. Finally, this court affirmed the conviction.
 {¶ 22} We turn first to the issue of the false allegations made against the step-brother. There is no dispute that there was, in fact, no sexual activity between the victim and the step-brother. Thus, pursuant to a correct reading of Boggs, the provisions of the rape shield law are not triggered. Instead, the trial court should have considered the provisions of Evid.R. 608(B) in determining whether to admit the evidence regarding the false statements made about the step-brother. Thus, we conclude that the trial court erred in its determination with regard to this issue.
 {¶ 23} Additionally, neither Boggs nor Villa preclude admission of evidence regarding the fact that the victim recanted earlier allegations against Ford. The rape shield law specifically contains an exception permitting the introduction of evidence regarding the victim's past sexual activity with the alleged offender. R.C. 2907.02(D). To read Boggs as precluding evidence of recantations against a defendant would render this exception meaningless. Boggs was concerned with allegations of sexual activity between the victim and an individual other than the defendant.
 {¶ 24} Additionally, a close reading of Villa reveals that this court was not asked to consider, and does not appear to have considered, the issue of whether the trial court erred in finding that Boggs mandated the exclusion of the evidence. To the contrary, this court was merely asked to determine whetherBoggs mandated a "two-part procedure," and whether the trial court conducted a sufficient hearing pursuant to Boggs.
 {¶ 25} Accordingly, we conclude that the trial court erred in its determination regarding whether to admit the prior false allegations against the step-brother and the victim's recantation of prior allegations against Ford. The First Assignment of Error is sustained.
 III {¶ 26} The Second Assignment of Error is as follows:
 {¶ 27} "MR. FORD WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, §§ 10 AND 16 OF THE OHIO CONSTITUTION, BECAUSE OF PROSECUTORIAL MISCONDUCT WHEN THE PROSECUTOR APPEALED TO THE PASSION AND SYMPATHY OF THE JURY IN BOTH OPENING AND CLOSING ARGUMENT AND DENIGRATED DEFENSE COUNSEL IN CLOSING ARGUMENT."
 {¶ 28} Ford contends that his conviction should be reversed due to three incidents of prosecutorial misconduct during opening statement and closing argument.
 {¶ 29} In evaluating a claim of prosecutorial misconduct, we are mindful that the conduct of the prosecuting attorney during trial does not warrant a reversal unless the conduct deprives the defendant of a fair trial. State v. Sapp, Clark App. No. 99 CA 85, 2002-Ohio-6863, ¶ 121. In making this determination, we must consider the entire record and not just isolated statements. Id.
 {¶ 30} First, Ford complains that the following passage from the prosecutor's opening statement constitutes misconduct:
 {¶ 31} "Prosecutor: Ladies and gentlemen, as you sit for this trial, the State of Ohio is going to ask you to do three things. Three things. First of all, put yourself in the victim's shoes. As you sit here and listen to this testimony and look at this evidence, put yourself in the victim's shoes. Think about the horror of being betrayed —
 {¶ 32} "Defense Counsel: Objection.
 {¶ 33} "Prosecutor: — in a position of authority over her.
 {¶ 34} "Defense Counsel: Objection.
 {¶ 35} "The Court: Overruled.
 {¶ 36} "Prosecutor: Think about the tear [sic], of being abused within your own home. Within the security of your own room, a place where all perversion of the outside world is supposed to be exactly that, outside. When you watch her testify, think about the things that she's been through as you judge her credibility."
 {¶ 37} Ford argues that, by this statement, the State improperly appealed to the sympathy of the jury.
 {¶ 38} This type of argument, in which counsel asks the jury to put themselves in the position of the victim, essentially seeks to have the jury abandon their position of impartiality. We have held that this type of argument is best avoided in civil cases. See, Lykins v. Miami Valley Hosp., 157 Ohio App.3d 291,305, 2004-Ohio-2732. We agree with the Court of Appeals for Cuyahoga County that asking jurors to put themselves in the position of the victim in a criminal case is improper and is error. See, State v. Hart, Cuyahoga App. No. 79564, 2002-Ohio-1084. In this case, we cannot say that this improper argument was harmless, especially given that Ford was prohibited from introducing evidence of the victim's prior false accusation and recantation, as outlined in Part II, above.
 {¶ 39} The State contends that in making this argument to the jury, it was merely asking the jury to appreciate the difficulty the young victim would naturally have had in coming forward with a serious accusation against her step-father. This point could easily have been made without asking the jurors "to put themselves in the victim's shoes."
 {¶ 40} Ford next complains that the prosecutor invoked religion in asking the jury to find him guilty. Specifically, the prosecutor commented that "something that's bigger than any of us [had] put you twelve people in a position to help [the victim]." We note that defense counsel objected to this statement and that the trial court sustained the objection. We conclude, therefore, that any misconduct on the part of the prosecutor was not prejudicial.
 {¶ 41} Finally, Ford contends that the prosecutor "denigrated" defense counsel during closing. Without repeating numerous pages of transcript, we note that the portion of the argument to which Ford objects involves the prosecutor's attempt to define the phrase "beyond a reasonable doubt."
 {¶ 42} Specifically, the prosecutor used the analogy that, during trial, the jurors were handed pieces of a puzzle that, when put together, begin to form a picture of the Statue of Liberty. He continued by stating that the jurors might begin to see the "Manhattan skyline" as well as a "crown" and an "arm with a torch." The prosecutor noted that pieces of the puzzle might still be missing at the end of trial, but the jurors could still determine, based on the parts of the picture visible, beyond a reasonable doubt that the picture was a picture of the Statue of Liberty.
 {¶ 43} The specific portion of the argument to which Ford objects is as follows:
 {¶ 44} "And over two days, three days, however long we've been doing this case, we've been handing you pieces of the puzzle. And I hand you some. I hand you [expert] testimony, and I hand you the victim; and you're taking these pieces of the puzzle. You don't have any idea what the puzzle — what the picture on the puzzle is going to be, but you guys are working together putting that puzzle together.
 {¶ 45} "As I hand them to you, defense they kind of spin them. They may give you pieces of the puzzle. They may take some of my pieces out, or they may spin mine a couple different ways."
 {¶ 46} When read in the context of the prosecutor's entire closing, we cannot say that this was an attempt to insult or denigrate defense counsel. Although we stop short of expressing our entire approval of this form of argument, both sides are entitled to some latitude in closing argument. We doubt that it will come as any surprise to a jury that each counsel is trying to "spin" the evidence adduced in ways helpful to their client's interests. We cannot say that this argument constitutes misconduct.
 {¶ 47} The Second Assignment of Error is sustained in part and overruled in part.
 IV {¶ 48} Ford asserts the following as his Third Assignment of Error:
 {¶ 49} "WAS MR. FORD DENIED DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, §§ 10 AND 16 OF THE OHIO CONSTITUTION, WHEN THE COURT DENIED HIS MOTION FOR A MISTRIAL AFTER `OTHER ACT' EVIDENCE WAS IMPROPERLY ADMITTED?"
 {¶ 50} In this assignment of error, Ford contends that the trial court improperly denied his request for a mistrial. Ford's request was based upon the claim that the State impermissibly introduced evidence of other, uncharged, bad acts, and that Ford was thereby deprived of a fair trial. Specifically, Ford argues that a mistrial was mandated when the prosecutor asked the victim whether Ford had taken pictures of her when she was nude.
 {¶ 51} We have reviewed the transcript, and note that the question about nude pictures was asked during the State's re-direct examination of the victim. We further note that shortly prior to the State's question, the defense conducted the following cross-examination of the victim:
 {¶ 52} "Q: Do you remember telling the police that Mr. Ford took nude pictures of you?
 {¶ 53} "A: Yes.
 {¶ 54} "Q: Okay. When did that happen?
 {¶ 55} "A: I don't really remember.
 {¶ 56} "Q: So do we know that that happened, or did you just say that?
 {¶ 57} "A: I know it happened.
 {¶ 58} "Q: And who did you tell that to?
 {¶ 59} "A: To the detective.
 {¶ 60} "Q: And do you know where the photographs are?
 {¶ 61} "A: On camera, a digital camera.
 {¶ 62} "Q: And who has the digital camera?
 {¶ 63} "A: Steve.
 {¶ 64} "Q: Do the police have it now?
 {¶ 65} "A: I believe so.
 {¶ 66} "Q: And when did those photographs take place?
 {¶ 67} "A: I don't remember."
 {¶ 68} This is a case of invited error. Under the invited-error doctrine, "[a] party will not be permitted to take advantage of an error [that] he himself invited or induced."Moreland v. Oak Creek OB/GYN, Inc., Montgomery App. No. 20468,2005-Ohio-2014, ¶ 18, quoting Hal Artz Lincoln-Mercury, Inc. v.Ford Motor Co. (1986), 28 Ohio St.3d 20, paragraph one of the syllabus. The defense is responsible for the original introduction of this evidence, and therefore, Ford cannot now raise error with regard thereto. Accordingly, the Third Assignment of Error is overruled.
 V {¶ 69} The First Assignment of Error having been sustained, the Second Assignment of Error having been sustained in part, and the Third Assignment of Error having been overruled, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 . . . . . . . . . . .
Grady, P.J., and Brogan, J., concur.