The STATE of Ohio, Appellee,

v.

PERSON, Appellant.

[Cite as *State v. Person*, 167 Ohio App.3d 419, 2006-Ohio-2889.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86514.

Decided June 8, 2006.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Matthew Golish, Assistant Prosecuting Attorney, for appellee.

Nancy Scarcella, for appellant.

CHRISTINE T. McMONAGLE, Judge.

{¶ 1} Defendant-appellant, Lavelle Person, appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of drug trafficking and possession of drugs, fifth-degree felonies, and sentencing him to 18 months' incarceration.

{¶ 2} In his four assignments of error, Person argues that the trial court should have declared a mistrial after the prosecutor elicited testimony that he remained silent after the arresting officers gave him his *Miranda* rights and,

later, after the jury inquired during deliberations about the identification of Person by the state's confidential reliable informant ("CRI"), who did not testify at trial; the trial court erred in sustaining the prosecutor's objection to defense counsel's use of photographs of the scene; and, the cumulative effect of these errors so prejudiced him that he was denied his right to a fair trial. For the reasons that follow, we reverse and remand for a new trial.

{¶ 3} The record reveals the following. On July 28, 2004, Cleveland police detectives from the Fourth District conducted a buy-bust operation. They utilized a CRI to approach persons believed to be selling drugs on the street in order to make a purchase of drugs within the sight of detectives. The detectives would first search the CRI, making sure he had nothing in his possession but a marked $20 bill. The CRI would then approach a person on the street and, in some manner or form, request to purchase crack cocaine. Six detectives would take part in this procedure: two would be "controllers" and/or "observers;" four would act as "take-downs" or arresting officers.

{¶ 4} In the buy-bust leading to Person's arrest, Detectives John Hall and Terrance Longstreet acted as observers. Hall testified that he saw the CRI approach the seller and saw a hand-to-hand transaction take place. At the time of the transaction, the seller was on a bicycle riding northbound on the west side of East 116th Street. At the conclusion of the transaction, the seller turned southbound on East 116th Street, rode to Continental Street, and turned west. Hall then lost sight of the seller. Detective Longstreet was parked in a location where he could not see the transaction; Detective Hall apprised him of what was happening via radio broadcast.

{¶ 5} Detective Hall broadcast a description of the suspect; however, at trial, all he remembered of the description was the bicycle. Hall's testimony was also inconsistent as to the distance from which he viewed the transaction. At one point, Hall testified that the CRI met up with the seller about 400 feet south of where Hall let the CRI out of the car. At another point, however, Hall testified that the distance was "from the witness stand to the end of the courtroom" (approximately 40 feet).

{¶ 6} As a result of the radio broadcast, the take-down officers (who were parked in another location) arrested Person, an African–American man seated on a bicycle on Continental Street. At trial, the take-down officers could not remember any details about the offender given to them over the radio, except that he was riding a bicycle. Detective Hall came to the scene and identified appellant in what appellant has characterized as a "cold stand." Detective Hall testified:

{¶ 7} "I drove west on Continental with the CRI, and I confirmed to the take-down cars that the defendant was the individual that sold to the CRI, and that the CRI also confirmed that he was the male that—"

{¶ 8} Defense counsel immediately objected to this testimony, and the trial court sustained the objection.

{¶ 9} Despite this ruling, when the prosecutor later questioned Detective Luther Roddy during trial, he asked the detective:

{¶ 10} "Q. Did Detective Hall identify him?

{¶ 11} "A. Yes.

{¶ 12} "Q. Did the CRI identify him?"

{¶ 13} Defense counsel again objected to this line of questioning, and the trial court again sustained the objection.

{¶ 14} Only Detective Hall observed the hand-to-hand transaction. Detective Longstreet, who did not see the transaction, testified that he saw the suspect turn the corner after the transaction was completed, but then lost sight of him. Neither the drugs nor the marked "buy money" was discovered on Person when he was searched upon his arrest.

{¶ 15} Person did not take the stand in his own defense; however, Michael Turner and Kimberly Tate, two Continental Street residents, testified for the defense. Both testified that they saw a male from the neighborhood, who was known as "G," take Person's bike and head north on East 116th Street. They then saw G return and ride the bicycle behind the house. Less than a minute later, they saw Person ride that same bike down the driveway, and they then observed his arrest. Although at trial the police officers could not recollect any description of the seller, Turner and Tate testified that both G and Person were tall, slim African–American men dressed in a white t-shirt and jeans, which both Turner and Tate described as the "uniform" of the neighborhood.

{¶ 16} During trial, the prosecutor asked Detective Roddy, who arrested Person:

{¶ 17} "Q. Did you read him his Miranda rights?

{¶ 18} "A. Yes.

{¶ 19} "Q. Did he make my (sic) statements?

{¶ 20} "A. No."

{¶ 21} The defense objected, but the court made no ruling. Defense counsel requested that the court give no curative instruction, alleging that any such instruction would only serve to highlight the error, rather than ameliorate it.

The court, nonetheless, gave an instruction on defendant's right to maintain his silence.

{¶ 22} It is mainly in light of these colloquies that Person seeks relief from this court. We agree with Person that significant errors and prosecutorial misconduct in this case deprived him of his right to a fair trial.

{¶ 23} The facts in this case are disputed. On one hand, we have Detective Hall, who saw the hand-to-hand transaction from some distance away but absolutely identified Person as the seller of the drugs. On the other hand, within minutes of the transaction, Person is arrested, and two neighbors, neither shown to have any reason to prevaricate, indicate that minutes before the arrest, another man—"G"—was on this same bicycle, dressed similarly to appellant. Corroborating their testimony is the fact that neither drugs nor "buy money" was found on Person when he was arrested.

{¶ 24} The neighbors' testimony should not be construed as proof that the jury lost its way in rendering a verdict of guilty, but rather utilized to place in context the prosecutor's inappropriate comment on Person's assertion of his *Miranda* rights and, further, his impermissible attempts to get the CRI's alleged identification of Person before the jury without any testimony from CRI. In short, that which standing alone might be insufficient to cause reversal, when viewed in the context of other attempts by the prosecutor to elicit inadmissible testimony, could well have been the breakpoint between a guilty and a not-guilty verdict.

{¶ 25} If the defense case is to be believed, Person had just begun riding the bicycle before he was arrested and was mistaken by the police for the drug seller. Under such circumstances, Person's assertion of his Fifth Amendment rights at arrest could readily cause jury suspicion as to his innocence. What person, innocently riding his bicycle and immediately accosted by police and accused of selling drugs to an undercover informant, would not immediately protest his innocence and explain his whereabouts in the minutes proceeding the arrest? That is obviously the inference suggested by the prosecutor's question to Detective Roddy about Person's failure to make a statement. If that were not the inference desired, why then ask the question at all? Detective Roddy's answer that Person failed to make a statement after he was read his *Miranda* rights has no possible relevance save the inference that Person did not speak because he was guilty, or had no innocent explanation for his behavior.

{¶ 26} The same is true for the prosecutor's questions concerning the identification of Person by the CRI. The state went to great lengths to resist identification of the CRI—including but not limited to refusing to produce his/her name in discovery and not producing him at trial. Once in trial, however, the prosecution realized that the *only* person who got a close look at the seller was the CRI. The state's attempt to elicit his testimony in his absence was

impermissibly attempted not once—but twice. While timely objections prevented the answer both times, the impression undoubtedly and indelibly imprinted upon the jury was that the CRI would indeed identify the defendant—if called.

{¶ 27} We cannot agree, as argued by the state, that the prosecutor's question regarding Person's silence after he was given his *Miranda* rights was not error because it was an "isolated incident," and the trial court gave a curative instruction. The prosecutor's impermissible question was error because, in context, it can only be construed as evidentiary use of Person's silence as evidence of his guilt. There simply was no other reason for asking the question.

{¶ 28} In *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, the United States Supreme Court noted that *"Miranda* warnings contain an implied promise, rooted in the Constitution, that 'silence will carry no penalty.' " *Wainwright v. Greenfield* (1986), 474 U.S. 284, 295, 106 S.Ct. 634, 88 L.Ed.2d 623. Thus, "what is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized." Id.

{¶ 29} This court has likewise recognized that "admitting evidence of post-arrest silence in a manner that implicitly suggests a defendant's guilt is impermissible." *State v. Gooden,* Cuyahoga App. No. 82621, 2004-Ohio-2699, 2004 WL 1172074, at ¶ 54. "The *Miranda* decision precludes the substantive use of a defendant's silence during police interrogation to prove his guilt." Id., citing *State v. Correa* (May 15, 1997), Cuyahoga App. No. 70744, 1997 WL 253173.

{¶ 30} Here, it is apparent that the prosecutor elicited inadmissible testimony from the state's police witnesses that Person remained silent after the *Miranda* warnings were given in order to support an inference that he was guilty. Although the prosecutor argues that the question and answer were "isolated" and, therefore, not prejudicial, we do not agree on the effect of the question and answer, especially in light of the prosecutor's other improper questions regarding whether the CRI had identified Person, despite the trial court's ruling that such testimony was objectionable.

{¶ 31} Moreover, although this court has held that an isolated reference to a defendant's postarrest silence does not constitute reversible error, see *State v. Ervin,* Cuyahoga App. No. 80473, 2002-Ohio-4093, 2002 WL 1824977, we made that ruling in the context of other overwhelming evidence against the defendant. Likewise, in cases citing *Ervin* and its apparent "single isolated comment rule," we have found the state's reference to the defendant's postarrest silence to be harmless error, *in light of other overwhelming evidence in the record.* See, e.g., *State v. Sims,* Cuyahoga App. No. 84090, 2005-Ohio-1978, 2005 WL 984499, at ¶ 55 ("There is moreover an independent and substantive basis to support the

trial court's verdict of guilty beyond a reasonable doubt"); *Gooden,* 2004-Ohio-2699, 2004 WL 1172074, at ¶ 55 ("The remaining evidence presented * * * comprised overwhelming proof of Gooden's guilt"); *State v. Dowdell,* Cuyahoga App. No. 83829, 2004-Ohio-5487, 2004 WL 2306678, at ¶ 29 ("There is, moreover, an independent and substantive basis to support the trial court's guilty verdict"); *State v. Thomas,* Cuyahoga App. No. 78570, 2002-Ohio-4026, 2002 WL 1821919 (single reference to the defendant's postarrest silence was not reversible error because "had the jury never heard the impermissible reference * * *, it would still have been justified in finding Thomas guilty * * * "). Thus, *Ervin* should not be read or understood to stand for the proposition that the state gets one free constitutional violation of a defendant's Fifth Amendment right not to be compelled to be a witness against himself.

■ {¶ 32} "Where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless 'beyond a reasonable doubt' if the remaining evidence alone comprises 'overwhelming' proof of defendant's guilt." *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, quoting *Harrington v. California* (1969), 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284.

■ {¶ 33} Because the evidence in this case is equivocal and does not provide "overwhelming" proof of Person's guilt, the prosecutor's conduct in eliciting testimony regarding Person's postarrest silence cannot be construed as harmless error.

■■ {¶ 34} The prosecutor's questions about the CRI's alleged identification of Person are similarly offensive. As outlined above, the prosecutor twice asked questions of the state's witnesses regarding whether the CRI, who did not testify, had identified Person at the scene as the person who sold him the drugs. In one instance, the officer answered in the affirmative before the objection was sustained; in the second instance, the objection to the same question was sustained before the answer was given.

{¶ 35} We view this objectionable questioning by the prosecutor, coupled with the prosecutor's question regarding Person's postarrest silence, as misconduct that prevented Person from receiving a fair trial. It is important to note that the prosecutor continued to ask the same question despite the trial court's ruling as to its inadmissibility. And lest there be any doubt that the jury was confused as to whether the CRI had identified Person as the drug seller, during the deliberation phase of the trial, the jury submitted the following question in written form to the court: "We would like to revisit the testimony of officer Hall's remark that he drove by during the cold stand, regarding who made identification of Mr. Person. *Was it officer Hall who made the ID, or both Officer Hall and*

*the CRI?* " (Emphasis added.) The jury's question is a clear indication that the prosecutor's improper questions about the CRI's identification of Person affected the jury. It was considering evidence of the CRI identification, even though there was no such evidence before them, and, therefore, the trial court should have declared a mistrial.

{¶ 36} In light of these significant errors, we sustain appellant's fourth assignment of error and hold that the cumulative effect of the errors, coupled with the fact that both errors involved prosecutorial misconduct in an otherwise questionable case, did in fact deprive Person of his right to a fair trial. Accordingly, we reverse and remand for a new trial.

{¶ 37} In light of our resolution of this assignment of error, appellant's first, second, and third assignments of error are moot, and therefore we need not consider them. App.R. 12(A)(1)(c).

Judgment reversed
and cause remanded.

KARPINSKI, P.J., concurs.

KILBANE, J., dissents.

KILBANE, Judge, dissenting.

{¶ 38} I respectfully dissent from the majority opinion and would affirm the judgment of the common pleas court.

{¶ 39} Both Person and the majority find error in the trial court's reference to Person's postarrest silence. The relevant portion of the trial transcript concerns the testimony of Cleveland Police Detective Luther Roddy, who testified that in his capacity as part of the take-down team, he received a description of Person from one of the investigating officers and was told Person's general direction of travel. Based on this information, Roddy testified that he approached an apartment building between East 116th Street and Continental and saw an individual, later identified as Person, at the side of the apartment building and sitting on a bike. Roddy and his partner approached Person, identified themselves as Cleveland police officers, and placed him under arrest. After testifying as to the details of the arrest, the following exchange took place between Roddy and the prosecutor:

{¶ 40} "Q: Did you read him his Miranda rights?

{¶ 41} "A: Yes.

{¶ 42} "Q: Did he make any statements?

{¶ 43} "A: No.

{¶ 44} "MR. BALBIER: Ob—."

{¶ 45} Although no full "objection" to this line of questioning appears on the record, the court later clarified its interpretation of the exchange with the following statement:

{¶ 46} "THE COURT: Okay. Thank you. All right. And I do recall that during the course of the testimony in question, the question was asked, the question, did he make a statement [sic] was preceded by the question, was he given his *Miranda* warnings, or words to that effect, which was answered yes, and then, did he make a statement was answered no.

{¶ 47} "Now, whether or not there actually was an objection at that point, again, that's questionable. I know counsel did—at least that's my understanding, that counsel did try—begin to make an objection, but then the answer was given no. I don't think the objection was followed through. Nonetheless, I do not recall ever ruling on an objection of that nature."

{¶ 48} The trial court then proceeded to cite this court's opinion in *State v. Thomas* (Aug. 8, 2002), Cuyahoga App. No. 78570, 2002-Ohio-4026, 2002 WL 1821919, which held that "even where courts have assumed error from the introduction of a statement regarding a defendant's exercise of the right to remain silent, the admission of such a statement will constitute harmless error beyond a reasonable doubt if, because of the relative strength of other evidence introduced, 'no juror could have entertained a reasonable doubt' as to * * * [the defendant's] guilt.' " Id. at ¶ 29, citing *State v. Motley* (1985), 21 Ohio App.3d 240, 21 OBR 256, 486 N.E.2d 1259.

{¶ 49} In addition to the reference to Person's post-Miranda silence, the court gave the following instruction to the jury:

{¶ 50} "[I]f there are any references made during the course of this trial to whether or not the defendant made any statements, you need to be advised, and it's certainly part of the Court's closing instructions as well, that the defendant need not give any statement at all.

{¶ 51} "The defendant is not required to make a statement. Now, whether the police ask a question or not, the defendant has no responsibility or reason to provide a statement, so any inference that you might draw from the fact, if a statement is not given is to be—is totally disregarded, because that is not a responsibility of any citizen to provide a statement in response to a request for same after an allegation of crimes."

{¶ 52} Based upon the isolated nature of the prosecutor's statement and the trial court's curative instruction, I would find that the state did not use the witness's postsilence comment in any prejudicial manner. Moreover, the record reflects that the state did not make evidentiary use of Person's silence as

evidence of his guilt. Therefore, from this record, I cannot conclude that but for the error, the outcome of the trial would clearly have been otherwise.

{¶ 53} In Person's second assignment of error, he additionally claims that a mistrial was warranted because of the jury's inquiry about whether the CRI or the investigating detective identified Person at the scene. He contends that this question violated his Sixth Amendment right to confrontation of witnesses. I disagree.

{¶ 54} During jury deliberation, and as referenced in the majority opinion, the jury submitted the following question to the trial court: "We would like to revisit the testimony of Officer Hall's remark that he drove by during the cold stand, regarding who made identification of Mr. Person. Was it Officer Hall who made the ID, or both Officer Hall and the CRI?" The trial court responded, "The Court has determined to respond to that question by saying, the Court cannot provide any transcript of any witness."

{¶ 55} A review of the transcript clearly shows that Detective Hall testified that he personally saw the hand-to-hand drug transaction take place, that Person was the same male he identified to the take-down officers as the one who sold to the CRI, and that Person was also the same man who was arrested that day as well. When the detective attempted to testify as to the CRI's statements, defense counsel objected to the following exchange:

{¶ 56} "A: The take-down cars arrived shortly, and detained the defendant on Continental, west of East 116th. During his detainment, I drove west on Continental with the CRI, and I confirmed to the take-down cars that the defendant was the individual that sold to the CRI, and the CRI also confirmed that he was the male that—

{¶ 57} "MR. BALBIER: Objection.

{¶ 58} "THE COURT: Sustained.

{¶ 59} "Q: So you identified him, is that correct?

{¶ 60} "A: Yes, I did."

{¶ 61} Person claims that through Detective Hall's testimony, the CRI made a statement to police that was testimonial in nature and that he was therefore deprived of the opportunity to cross-examine the CRI as to this statement in violation of his right to confrontation. Detective Hall's statement regarding both his and the CRI's identification of Person, however, did not amount to a separate statement by the CRI, as inferred by the majority. Defense counsel objected to the question, and the objection was sustained; any further testimony focused only on Detective Hall's personal observations. This testimony, and the isolated

reference to the CRI, did not amount to a violation of Person's right to confrontation of witnesses.

{¶ 62} For these reasons, I would hold that Person's second assignment of error also lacks merit.

{¶ 63} Although found moot by the majority due to its dispensation of the case on the fourth assignment of error, in Person's third assignment of error, he claims the trial court erroneously failed to admit relevant crime-scene photographs. The record reveals that defense counsel failed to file discovery and that the trial court refused to admit the photographs as a remedy for a Crim.R. 16 violation. In refusing to admit the photographs, the trial court found:

{¶ 64} "[T]he Court is not—at this point is not altering any of its prior rulings with respect to any of the issues addressed here. The photo evidence is obviously, still excluded. I will permit that to be marked and submitted as part of the record for appellate purposes only.

{¶ 65} "But the Court will note that the reason for their exclusion, again, is the violation of the discovery rule, and also, although, appreciate counsel's argument that certainly pictures are what they are, pictures can take many different forms, can be taken from different angles, can emphasize different things in photographs.

{¶ 66} "Therefore, I believe that is the reason why we do have discovery rules, so that can at least be disclosed to the other side. So they do have a fair chance then to—if they do not feel pictures are accurate representations of the scene, that they would be able to introduce any evidence that would be contrary to the evidence sought to be introduced."

{¶ 67} As the Ohio Supreme Court held in *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, paragraph two of the syllabus:

{¶ 68} "A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery."

{¶ 69} *State v. Harcourt* (1988), 46 Ohio App.3d 52, 546 N.E.2d 214, then found that the *Lakewood* holding should not be construed to mean that "[t]he exclusion of testimony or evidence is never a permissible sanction in a criminal case. It is only when the exclusion acts to completely deny the defendant his or her constitutional right to present a defense that the sanction is impermissible."

{¶ 70} I agree with Person's assertion that both he and the state elicited a substantial portion of testimony regarding the scene of the incident and that the defense witnesses, Michael Turner and Kimberly Tate, were lay witnesses.

However, a review of the transcript indicates that Person failed to comply with discovery and that the photographs were not available to the state's witnesses during their testimony, in violation of Crim.R. 16. Despite this discovery violation, the transcript indicates that the trial court permitted both the state's and the defense's witnesses to utilize a diagram to illustrate the positions of both the parties and the houses throughout the course of their respective testimony. Although Person's photographs were not admitted, both defense witnesses were permitted to testify and both witnesses utilized a diagram to aide and illustrate their testimony. I cannot say that the trial court's refusal to admit the photographs amounted to a complete denial of Person's right to present a defense.

{¶ 71} Therefore, I would hold that Person's third assignment of error lacks merit.

{¶ 72} In his final assignment of error, and the assignment that the majority finds dispositive, Person asserts that the cumulative effect of the trial court's errors, as set forth in his first three assignments of error, deprived him of a fair trial. However, and as the Ohio Supreme Court has held, "such [nonprejudicial] errors cannot become prejudicial by sheer weight of numbers." *State v. Hill* (1996), 75 Ohio St.3d 195, 212, 661 N.E.2d 1068, *State v. Hooks* (2001), 92 Ohio St.3d 83, 85, 748 N.E.2d 528.

{¶ 73} Because I would hold that the first three assignments of error lack merit, I cannot say that the cumulative effect of these alleged errors during Person's trial denied him due process and a fair trial.

{¶ 74} Although defense witnesses Tate and Turner put forth an alternative set of facts and claimed that a person known only as "G" committed the crime, the jury was free to disregard this testimony and accept the officers' testimony that Person was, in fact, the man seen conducting a hand-to-hand drug transaction with the CRI. Person also asserts that the fact that the marked Cleveland Police Department buy money was never recovered also weighs in favor of his innocence. The jury heard testimony that buy money is not recovered in each instance; therefore, the failure to recover such money is not indicative of either guilt or innocence, and the jury was free to weigh the testimony before reaching its decision. For these reasons, I would also hold that Person's fourth assignment of error lacks merit and affirm the ruling of the trial court.