JOURNAL ENTRY AND OPINION
{¶ 1} After a jury convicted him of all twenty-six counts of an indictment that charged him with committing rape, gross sexual imposition and kidnapping, defendant-appellant Ronald Jackson appeals both his convictions and the sentence subsequently imposed upon him.
 {¶ 2} Jackson presents seven assignments of error in which he claims that the prosecutor's misconduct compromised the fairness of his trial, that many of the indicted counts failed to give him adequate notice of the particular charge and, further, constituted allied offenses for which he should not have been convicted, that some of his rape convictions were based upon insufficient evidence, that his convictions are unsupported by the weight of the evidence, and that he was *Page 2 
improperly sentenced.[1]
 {¶ 3} Since this court finds his first assignment of error has merit, i.e., that the prosecutor's conduct tainted the trial's fairness, Jackson's convictions must be reversed, and this matter remanded for a new trial. Jackson's remaining assignments of error, accordingly, are moot. App.R. 12(A)(1)(c).
 TRIAL PROCEEDINGS {¶ 4} Jackson's convictions were based mainly upon the testimony of the two female victims, his granddaughters, T and M.[2] In 1994, at the ages of five and two-and-a-half, respectively, they came to live with Jackson and some of their other relatives in a house on Hampden Avenue in Cleveland. At the time, Jackson was in his forties, and their great-grandparents, who also lived in the house, were in their seventies.
 {¶ 5} T testified as follows. When she attained puberty at about the age of eleven, Jackson began molesting her. She stated he called her down to the basement, asked her to lift her shirt and bra, and "would touch on [her] breasts and put his mouth on [her] breasts and stuff like this." This occurred "about twelve times" between her eleventh and thirteenth birthdays. Although she never noted either the dates or the time of year of these incidents, T seemed very sure of her *Page 3 
count. She stated that although she felt that she "could have" left the basement, she did not.
 {¶ 6} T further testified that "sometimes" Jackson came into the bathroom while she was bathing. Jackson got "on his knees" next to the tub, and "just start touching [her] on [her] breasts or putting his mouth on [her] breasts." She stated this occurred "one time," while "the other two times he just came in there and went to the bathroom."
 {¶ 7} Sometime when she was twelve years old, T remembered waking in her bed to find Jackson "on top of [her], trying to have intercourse with" her. She stated Jackson was "trying to insert [his penis] in [her] vagina" for approximately ten minutes before he gave up. T testified that Jackson "four times [had] intercourse" with her. T subsequently explained her interpretation of Jackson's actions on these occasions, however, by indicating "intercourse" encompassed any attempt at sexual conduct. To her, "successful" intercourse meant that Jackson ejaculated; she made no distinction on the basis of whether penetration occurred.
 {¶ 8} According to her testimony, the "first" rape occurred in the basement, when Jackson "started touching on [her] breasts and putting his mouth on them," then told her to "pull up [her] dress and pull down [her] underclothes." She testified that Jackson ordered her to lay upon a pile of clothing on the floor, "and then he got *Page 4 
on top of [her] and then he started to penetrate" her vagina with his penis. This incident occurred when she was "between either twelve or thirteen" years old.
 {¶ 9} Another time, Jackson had her bend over a basement cabinet, "and then he just pulled [her] dress up and pulled [her] underwear down and then he tried to penetrate [her] in the anus, but it didn't work." The third time was the incident she described in her bed, and the fourth time occurred "in the bathroom." No further description of this particular occasion was provided. T indicated that on two of these occasions, Jackson ejaculated. When the prosecutor asked if Jackson ever inserted his fingers into her, T answered, "No.".
 {¶ 10} In addition to the foregoing testimony, T indicated that during the time she lived in the house, her great-grandfather, who was over eighty years old, sometimes had "sexual intercourse" with her. Furthermore, Jackson's brother Timothy, her great-uncle, sexually abused her, along with two other uncles who were unrelated to Jackson. T also stated that one of her foster fathers touched her in a sexual manner.
 {¶ 11} M testified as follows. She stated Jackson began sexually abusing her when she reached the age of twelve. M seemed to have a better memory of the incidents than T. M stated Jackson called her to the basement, "told [her] to lift up [her] shirt, * * * and he touched [her] breasts."
 {¶ 12} M testified Jackson raped her on two occasions. Once, he pushed her *Page 5 
onto a bed, "got on top of [her], and he stuck his penis in [her] vagina, and [she] screamed," because "it hurt and [she] was scared." The second time, he entered the bathroom while she was bathing, and, before she could wrap a towel around herself, he "lifted [her] up by [her] arms and set [her] on the dresser," pushed her onto her back, held her hands down, and "stuck his penis in [her] vagina again."
 {¶ 13} According to the testimony of other witnesses, Jackson's abuse of the girls came to light early in 2005. By that time, T was sixteen years old and lived with other relatives. One of those relatives found a letter she wrote that referred to the incidents, confronted T with it, and convinced her to talk about the letter's contents. Approximately a month later, M also spoke out about her experiences.
 {¶ 14} Cleveland police detective Pamela Berg investigated the case. Berg testified Jackson provided a written statement in which he denied improper sexual behavior with the girls, but conceded, among other things, that T once might have "bumped" him with her breasts, that he saw M's breasts one time when she deliberately lifted her shirt in his presence, and that he sometimes checked on them while they were bathing. Jackson asserted that schoolteachers complained about each girl's "smell," and "they" told him to check on the girls' bathing habits.
 {¶ 15} As a result of the investigation, Jackson was indicted on twenty-six counts. The first five pertained to M, and charged him with gross sexual imposition, two counts of forcible rape of a child under thirteen years old, and two counts of *Page 6 
kidnapping. The remaining counts pertained to T. In them, Jackson was charged with thirteen counts of gross sexual imposition, four counts of forcible rape of a child under thirteen years old, and four counts of kidnapping. Each count of rape and kidnapping contained a notice of Jackson's prior conviction for burglary in 1977, and each count of kidnapping additionally contained a sexual motivation specification.
 {¶ 16} After hearing the testimony and the arguments of counsel, the jury found Jackson guilty on all counts. The trial court imposed concurrent terms of imprisonment as follows: life on each count of rape, nine years on each count of kidnapping, and three years on each count of gross sexual imposition. Additionally, although the trial court failed to mention it during the hearing, the journal entry of sentence states that "post release control is part of Jackson's sentence.
 LAW AND ANALYSIS {¶ 17} Although Jackson presents seven assignments of error, his first is dispositive of this appeal. In his first assignment of error, Jackson argues that the conduct of the prosecutor during the proceedings compromised his right to a fair trial.
 {¶ 18} Jackson points mainly to statements made during closing argument, but a review of the entire record supports a conclusion that the prosecutor's misconduct renders the jury's indiscriminate verdict of guilt against Jackson on all counts unreliable. State v. Person, 167 Ohio App.3d 419; 2006-Ohio-2889. *Page 7 
 {¶ 19} In order to determine whether prosecutorial misconduct occurred, a reviewing court must determine whether the statements or questions were improper, and if so, whether in the context of the entire record, they affected the defendant's substantial rights, including his right to a fair trial. State v. Papp (1978), 64 Ohio App.2d 203;State v. Smith (1984), 14 Ohio St.3d 13; State v. Ford, Clark App. No. 2005-CA-76, 2006-Ohio-2108. See also, State v. Poling, Portage App. No. 2004-P-0044, 2006-Ohio-1008, T|17, citing State v. Smith,87 Ohio St.3d 424, 442, 2000-Ohio-450.
 {¶ 20} With respect to closing argument, the prosecutor is entitled to a certain degree of latitude. State v. Apanovich (1987),33 Ohio St.3d 19. Isolated comments, therefore, should not be taken out of context and given their most damaging meaning. State v. Carter, 89 Ohio St.3d 593,2000-Ohio-172. Nevertheless, the prosecutor must confine himself to certain limits. State v. Liberatore (1982), 69 Ohio St.2d 583.
 {¶ 21} It must be noted in considering Jackson's first assignment of error that Jackson made only one objection during the course of the prosecutor's closing argument. Ordinarily, this fact in itself waives most of his appellate argument. State v. Poling, supra, T|29. However, the trial court overruled the objection, which indicates more would have been futile. Additionally, as is its duty, this court has reviewed the entire record, and, in that light, is constrained to agree that the *Page 8 
prosecutor's conduct in this case cannot be countenanced. Id., ¶ 30-37; see also, State v. Person, supra.
 {¶ 22} The record in this case demonstrates the prosecutor failed to limit himself to appropriate closing argument by: 1) stating facts that were not in evidence; 2) extensively giving his personal opinions on the credibility of the witnesses; 3) denigrating the defense; and, 4) appealing on behalf of the victims to the sympathy of the jurors.State v. Ford, supra; State v. Thornton, Cuyahoga App. No. 80136, 2002-Ohio-6824.
 {¶ 23} First, at the outset of the prosecutor's closing argument, he not only sought to supply deficiencies in his evidence by providing "facts" not provided by the witnesses during their testimony, but he also usurped the province of the trial court. The prosecutor stated:
 {¶ 24} "Each of the young ladies who testified in this case told you they were afraid of the defendant, and that he held them down by force or he held them against their will. They were not free to leave. That is enough for kidnapping. Restraint of liberty for the purposes of committing a sex offense is kidnapping." T testified, however, that, sometimes, she felt that she "could have" left the basement.
 {¶ 25} Further on in his remarks, the prosecutor asserted that M, rather than T, first disclosed the abuse; by explaining "why she was withdrawn and why she was sullen." According to the testimony, however, M did not disclose any abuse until a *Page 9 
month after T.
 {¶ 26} Thereafter, the prosecutor additionally asserted that T "came forward" to disclose the abuse when "she was finally in a safe place." T's testimony, however, proved she continued to run away from her homes up until the time of trial.
 {¶ 27} The prosecutor mischaracterized T's testimony, arguing that her "coming forward" was the result of "just writing as young girls in adolescence will, just journalizing her life." T said nothing about keeping any journal of her experiences. Moreover, the prosecutor also asserted that, during her testimony about the abuse, T spoke "about other instances where [Jackson] put his fingers in her vagina," when she specifically had stated nothing of the sort occurred.
 {¶ 28} Second, the prosecutor gave his personal opinion concerning the credibility of the witnesses. He challenged the jurors to find Jackson "not guilty if you don't believe those two little girls," because "no one else can tell you what happened * * *." The prosecutor further asserted that the "only" people "who were there [during the incidents] came in and told `ya that [Jackson] raped them, that he fondled them, that he kissed their breasts." Furthermore, "not once did they switch up or falter or change their story. The truth does not change." The prosecutor thereby asserted his witnesses were truthful.
 {¶ 29} On the other hand, a defense witness' testimony that "nobody [was] allowed down in that basement [was] a lie." Thus, he implied that since the defense *Page 10 
witness was a liar, Jackson's defense, too, was not worthy of any belief.
 {¶ 30} The prosecutor encouraged the jury to "find [Jackson] guilty of everything because he touched those little girls over the period of time of 1999 right through 2004. And he raped them on numerous occasions. And any time you restrain someone of their liberty for committing a sex act, that's kidnapping. [The judge] will tell you that. That's what the evidence told `ya. It's a no brainer. Find him guilty because no one, not one shred of evidence in this case says that did not happen." These statements were asserted despite the evidence that Jackson made a written statement to deny the allegations.
 {¶ 31} Following defense counsel's closing argument, the prosecutor in rebuttal denigrated opposing counsel's argument thusly: "Defense counsel is absolutely right. My victim, [T] is not a perfect human being. * * * [S]o find [Jackson] not guilty." The prosecutor provided his own opinion: opposing counsel's defense "theory, I think, is just incredible — but what the heck, apparently [M] is making this up because she wants to be with her sister. Well, that's novel." As he continued, the prosecutor stated that T did not have to "tell you about any of the abuse, but she "didn't duck one punch from defense counsel," implying that defense counsel himself was abusing her.
 {¶ 32} Furthermore, defense counsel's view of the evidence was "absolutely mistaken;" the girls could not have "got together and put these stories together" *Page 11 
because T was "running away" and could not have spoken to M. The prosecutor made this assertion despite M's testimony that she and T remained close after they were separated.
 {¶ 33} The prosecutor's parting shots informed the jury that "there is no defense [in the judge's instructions that] will tell you * * * if a person has been a victim before, sexually assaulted before, find this knucklehead not guilty * * *. [T] told you what happened in that house. And not one person, not one single, solitary person has said anything to the contrary." Indeed, "there is nothing to suggest that what she told you is not accurate."
 {¶ 34} The prosecutor thus appealed to the sympathy of the jury by characterizing the victims, who were teenagers living in other homes at the time of trial, as "little girls" still fighting against their lying grandfather, and by implying Jackson's written statement in which he denied his guilt was unworthy of any rebuttal argument.
 {¶ 35} The jury followed the prosecutor's suggestion and simply found Jackson guilty on all counts.
 {¶ 36} T's testimony, however, proved only two counts of rape; as to the other two counts, she testified Jackson made only an attempt. As to the counts of gross sexual imposition, the only distinctions T made were that some occurred in the basement, and some in the bathroom; she gave no details that otherwise would *Page 12 
separate them. Moreover, neither of the victims provided evidence which supported convictions for kidnapping separate from the rapes. The jury's indiscriminate verdict, therefore, demonstrates the prosecutor's improper argument tainted the fairness of Jackson's trial.
 {¶ 37} Additionally, the transcript of trial shows the prosecutor's leading questions, in many instances, provided for the victims the answers he sought to obtain from them. State v. Poling, supra. In other words, the evidence of Jackson's guilt of each of the twenty-six counts of the indictment is not so overwhelming as to overcome the amount of misconduct that exists in the record. Id., citing State v. Lott (1990),51 Ohio St.3d 160; cf., State v. Ahmed, Stark App. No. 2004CA00379,2005-Ohio-5654.
 {¶ 38} This is an unfortunate result, because overwhelming evidence of Jackson's guilt was presented on a number of the counts. However, from the totality of the record, this court cannot find the prosecutor's conduct constitutes "harmless error." See, State v. Brewer, Cuyahoga App. No. 87701, 2006-Ohio-6029; State v. Person, supra.
 {¶ 39} Jackson's first assignment of error, accordingly, is sustained. His remaining assignments of error are moot.
 {¶ 40} His convictions and sentence are reversed, and this matter is remanded to the trial court for a new trial. *Page 13 
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J. CONCURS.
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY
(SEE ATTACHED CONCURRING OPINION)
 Appendix
The assignments of error state:
First Assignment of Error:
"The defendant was denied his constitutional right to a fair trial because of prosecutorial misconduct during closing argument that unfairly prejudiced the defendant."
Second Assignment of Error:
"Appellant's indictment for and conviction of repetitive and unspecific offenses violated his due process rights to notice of the crime charged and protection from *Page 14 
double jeopardy, and requires the dismissal of duplicative counts."
Third Assignment of Error:
"The kidnapping convictions and sentences must be reversed, as any restraint of the victims was merely incidental to the underlying crimes."
Fourth Assignment of Error:
"The jury's decision finding the defendant guilty of four counts of rape of T was not supported by sufficient evidence when she only claimed to have been raped two times."
Fifth Assignment of Error:
"The jury's decision finding T to have been under the age of thirteen at the time of the alleged rapes was not supported by sufficient evidence when she testified that she may have been thirteen years of age at the time."
Sixth Assignment of Error:
"The jury's decision finding the defendant guilty of sexually molesting his young granddaughter was against the manifest weight of the evidence."
Seventh Assignment of Error:
"The trial court erred in failing to advise Mr. Jackson of post-release control, and erroneously sentencing him to three years on Count 26, a felony of the fourth degree."
[1] Jackson's assignments of error are attached as an appendix to this opinion.
[2] Pursuant to this court's policy of protecting their privacy, the victims are referred to only by initials. *Page 15